Craig S. Ganz (217254)
ganzc@ballardspahr.com
Mitchell L. Turbenson
(admitted *pro hac vice*)
turbensonm@ballardspahr.com
BALLARD SPAHR LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone:  424.204.4400
Facsimile:   424.204.4350
*Attorneys for Plaintiffs and
Counterdefendant*

# THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STORE SPE LA FITNESS 2013-7, LLC and STORE MASTER FUNDING V, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>FITNESS INTERNATIONAL, LLC and FITNESS & SPORTS CLUBS, LLC,<br><br>Defendants.<br>―――――――――――――<br>FITNESS & SPORTS CLUBS, LLC,<br><br>Counterclaimant,<br><br>vs.<br><br>STORE SPE LA FITNESS 2013-7, LLC,<br><br>Counterdefendant. | NO.  8:20-CV-00953-JVS (ADS)<br><br>**PLAINTIFFS STORE SPE LA FITNESS 2013-7, LLC'S AND STORE MASTER FUNDING V, LLC'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[*Filed concurrently with Reply Statement of Facts*]<br><br>Judge:         Hon. James V. Selna<br>Date:          June 28, 2021<br>Time:          1:30 p.m.<br>Courtroom:  10A<br><br>Action Filed:  May 22, 2020 |

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone:  424.204.4400

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................1

DEFICIENCIES IN DEFENDANTS' OPPOSITION ...............................1

DISCUSSION..................................................................................................3

   I.    STORE Is Entitled to Summary Judgment on F&S's Counterclaims Because F&S Did Not Provide the Contractually Prescribed Notice and Opportunity to Cure...........................................3

       A.    The Court Must Strictly Construe the Edge O Lake Lease's 30-Day Notice and Cure Provision. .............................3

       B.    F&S Sent a Notice of Default *Months* After the Potential Subtenant Terminated the Potential Sublease, So There Was No Sublease for STORE to Consent to and No Default. ........................................................................................6

       C.    Claims for Breach of the Covenant of Good Faith and Fair Dealing Are Inherently Tied to Breach of Contract Claims. .........................................................................................7

   II.    Defendants Do Not Identify Any Authority or Disputed Facts to Avoid Summary Judgment as to Liability on FAC Counts I and II for Failing to Maintain the Preston Highway Property HVAC Units. .........................................................................................................7

   III.   Defendants Provide No Legal Justification for Their Refusal to Pay Amounts Owed Under the Lease (FAC Counts VI and VII) ........9

       A.    No "Force Majeure" Event *Caused* Defendants' Refusal to Make Monetary Payments Under the Leases. ......................10

       B.    Neither the Impossibility Doctrine Nor the Supervening Impracticability Doctrine Applies .............................................12

       C.    Government Closure Orders Have Not Totally or Nearly Destroyed the Purposes of the Leases .......................................13

       D.    Adequate Consideration Continues to Support the Leases. .....15

       E.    There Has Been No Condemnation of the Properties .............16

   IV.   By Virtue of Its Guaranty Agreements, FI Is Also Responsible for F&S's Payment Obligations Under the Edge O Lake Lease, Blake James Lease, Wellington Lease, and Is Liable Under Preston Highway Lease Section 3....................................................17

CONCLUSION................................................................................................17

# **TABLE OF AUTHORITIES**

**Page(s)**

## Federal Cases

*1600 Walnut Corp. v. Cole Haan Co.*,
  No. 20-4223, 2021 U.S. Dist. LEXIS 60156 (E.D. Pa. Mar. 30,
  2021) ............................................................................................... 16

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
  457 F.3d 1062 (9th Cir. 2006) ............................................................. 17

*Bay City Realty, LLC v. Mattress Firm, Inc.*,
  No. 20-CV-11498, 2021 U.S. Dist. LEXIS 67054 (E.D. Mich. Apr.
  7, 2021) ........................................................................................... 14

*Bayader Fooder Trading, LLC v. Wright*,
  No. 13-2856, 2014 U.S. Dist. LEXIS 149191 (W.D. Tenn. Oct. 21,
  2014) ............................................................................................... 11

*Bristol Preservation, LLC v. IGC-Bristol, LLC*,
  No. 2:16-CV-360-TAV-MCLC, 2017 U.S. Dist. LEXIS 97937
  (E.D. Tenn. June 26, 2017) ........................................................... 4, 5, 6

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................... 1, 2, 17

*In re: Cinemex Real Estate Holdings, Inc.*,
  No. 20-14695-BKC-LMI, 2021 Bankr. LEXIS 200 (S.D. Fla. Jan.
  26, 2021) ........................................................................................... 12

*Coleman v. Wells Fargo Banks, N.A.*,
  218 F. Supp. 3d 597 (M.D. Tenn. 2016) ................................................. 7

*Emerald Int'l Corp. v. WWMV, LLC*,
  No. 15-179-WOB-JGW, 2016 U.S. Dist. LEXIS 107340 (E.D. Ky.
  Aug. 15, 2016) ................................................................................... 11

*EPAC Techs., Inc. v. Thomas Nelson, Inc.*,
  No. 3-12-0463, 2015 U.S. Dist. LEXIS 151659 (M.D. Tenn. Nov.
  9, 2015) ............................................................................................... 7

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

*Gap Inc. v. Ponte Gadea N.Y. LLC*,
    No. 20 CV 4541-LTS-KHP, 2021 U.S. Dist. LEXIS 42964
    (S.D.N.Y. Mar. 8, 2021) ................................................................... 15

*Gentry-Youngblood v. MHC Mortg. Inc.*,
    No. 1:15-cv-123, 2016 U.S. Dist. LEXIS 71877 (E.D. Tenn. June
    2, 2016) ............................................................................................... 7

*Miller v. Glenn Miller Prods., Inc.*,
    454 F.3d 975 (9th Cir. 2006) ............................................................. 1

*SEC v. Schooler*,
    106 F. Supp. 3d 1157 (S.D. Cal. 2015) ............................................. 9

*Taybron v. City & County of San Francisco*,
    341 F.3d 957 (9th Cir. 2003) ........................................................... 16

*TJM 64, Inc. v. Harris*,
    475 F. Supp. 3d 828 (W.D. Tenn. 2020) ......................................... 16

*Vesey Air, LLC v. Mayberry Aviation, LLC*,
    No. 1:09-CV00011-TBR, 2010 U.S. Dist. LEXIS 89145 (W.D. Ky.
    Aug. 27, 2010) ................................................................................. 17

**State Cases**

*Abney v. Nationwide Mut. Ins. Co.*,
    215 S.W.3d 699 (Ky. 2006) ....................................................... 10, 11

*CAB Bedford LLC v. Equinox Bedford Ave, Inc.*,
    No. 652535/2020, 2020 N.Y. Misc. LEXIS 10861 (N.Y. Sup. Ct.
    Dec. 22, 2020) ............................................................................ 14, 15

*Frazier v. Collins*,
    300 Ky. 18 (Ky. Ct. App. 1945) ................................................ 13, 14

*Greg Calfee Builders LLC v. Magee*,
    616 S.W.3d 545 (Tenn. Ct. App. 2020) ............................................ 5

*Haun v. King*,
    690 S.W.2d 869 (Tenn. Ct. App. 1984) .......................................... 13

*Luigart v. Fed Parquetry Mfg. Co.*,
    238 S.W. 758 (Ky. Ct. App. 1922) ............................................ 15, 16

*Maggart v. Almany Realtors, Inc.*,
    259 S.W.3d 700 (Tenn. 2008) ............................................................ 10

*MLG Enters., LLC v. Johnson*,
    507 S.W.3d 183 (Tenn. 2016) ............................................................ 17

*Planters Gin Co. v. Fed. Compress & Warehouse Co.*,
    78 S.W.3d 885 (Tenn. 2002) ............................................................... 4

*UMNV 205-207 Newbury, LLC v. Caffe Nero Ams., Inc.*,
    No. 2084CV01493-BLS2, 2021 Mass. Super. LEXIS 12 (Mass.
    Superior Court Feb. 8, 2021) ............................................................. 15

*Williams v. Whitehead*,
    854 S.W.2d 895 (Tenn. Ct. App. 1993) ............................................ 14

**Rules**

Fed. R. Civ. P. 56 ................................................................................. 1, 9

L.R. 56-3 ................................................................................................... 9

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

## INTRODUCTION

Defendants Fitness & Sports Clubs, LLC's ("F&S's") and Fitness International's ("FI's") Opposition confirms they have no legal justification for disregarding their contractual obligations to pay rent, to provide notice of default, and to repair or reimburse its landlord for vandalized property. Indeed, Defendants' Opposition is a winding narrative that drifts into immaterial tangents, such as circumstances behind a purported release—which Defendants admit is not an issue in the case, (Doc. 68 at 13–14)—as well as the posture of discovery (despite not requesting to delay the Court's ruling under Fed. R. Civ. P. 56(d)), (Doc. 68 at 7).

F&S has not identified any facts or law that would preclude the Court from entering partial summary judgment in Plaintiffs STORE Master Funding V, LLC ("STORE Master's") and STORE SPE LA Fitness 2013-7, LLC ("STORE's") favor. Thus, the Court should grant Plaintiffs' Motion. Plaintiffs and Counterdefendant are entitled to judgment in STORE Master's favor as to liability alone on the First Amended Complaint's ("FAC's") Counts I and II; judgment in STORE's favor in an amount of **$1,271,411.59** (plus any further amounts owed before judgment is entered) under FAC Counts VI and VII; and judgment in STORE's favor as to F&S's two Counterclaims.

## DEFICIENCIES IN DEFENDANTS' OPPOSITION

After months of discovery and after Plaintiffs/Counterdefendant filed their Motion, Defendants'/Counterplaintiff's burden is to identify facts supported by evidence that create a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment will be entered against the non-moving party if that party does not present such specific facts." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987–88 (9th Cir. 2006) (citation omitted).

Defendants' Opposition fails to carry Defendants' basic procedural obligations under the summary judgment standard. First, as outlined by Plaintiffs' Reply Statement of Genuine Disputes attached hereto, Defendants "dispute"

1

PLAINTIFFS' AND COUNTERDEFENDANT'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT (COUNTERCLAIMS AND COUNTS I, II, VI, AND VII): NO. 8:20-cv-00953

numerous facts without citation to evidence or without explanation.  For example, Plaintiffs' Statement of Undisputed Facts ("SUF") ¶ 30 quotes from Defendants' own e-mail to state: "Defendants admit that 15 HVAC rooftop units at the Preston Highway Property were 'destroyed' by 'vandalism' that 'was discovered' on July 24, 2017." (Doc. 68-3 at 18).  Defendants nonsensically "dispute" this fact because (citing the same e-mail) "The email was sent prior to the police arriving and prior to any investigation and was estimating damage." (Doc. 68-3 at 18).  Not only is this statement about "police" and "estimating" illogical, but Defendants later provide similar "undisputed facts" without mentioning "police" and, in any event, provide *no evidence* for its claim about police.  (Doc. 68-3 at 74–75 ("the vandalism was discovered on July 24, 2017")).

Next, under *Celotex*, Defendants are required to *specify* the dispute of material fact precluding summary judgment, but Defendants fail to carry that burden throughout the Opposition.  Among the examples, Defendants argue the Court cannot enter summary judgment on FAC Counts I and II because Defendants assert four affirmative defenses to those Counts *but fail* to provide any legal argument or evidence supporting those defenses.  (Doc. 68 at 30:5–11).  The mere assertion of affirmative defenses cannot preclude summary judgment, and Defendants fail to provide a single citation to support such an attenuated position. As another example, Defendants claim that the Court cannot enter summary judgment on FAC Counts VI and VII because those counts involve a "fact-intensive inquiry." (Doc. 68 at 31:3).  Yet, Defendants identify *no disputed fact* supporting their argument of a necessary "intensive inquiry", and, thus, Defendants have not carried their burden under *Celotex*.  Defendants have not only failed to meet their burden to identify genuine issues of disputed facts, but also (as demonstrated below) cannot rebut the Motion's showing of entitlement to summary judgment as a matter of law.  For these reasons and for the reasons set forth in prior pleadings, and in the arguments below the Court should grant Plaintiffs' Motion.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

## DISCUSSION

I.      **STORE Is Entitled to Summary Judgment on F&S's Counterclaims Because F&S Did Not Provide the Contractually Prescribed Notice and Opportunity to Cure.**

How can STORE cure a default when there is no active default to cure? F&S cannot contest that it first provided STORE with written notice of a purported default about consenting to the Potential Sublease under the Edge O Lake Lease ***three months*** after the Potential Sublease was terminated. (Doc. 68 at 12:1–3).[1] Instead, F&S argues the Court cannot grant summary judgment as to F&S's two Counterclaims for three reasons[2]:

- ▪ The Edge O Lake Lease purportedly "does not require an 'opportunity to cure,'" (Doc. 68 at 25:16–27:23);

- ▪ STORE purportedly had an ability to cure after F&S sent written notice (despite the Potential Sublease being terminated months prior to the notice), (Doc. 68 at 25:25–26:3); and

- ▪ Claims for the breach of the covenant of good faith and fair dealing purportedly require a factfinder, (Doc. 68 at 27:24–28:8).

F&S's arguments are incorrect and cannot preclude entry of summary judgment.

### A.      The Court Must Strictly Construe the Edge O Lake Lease's 30-Day Notice and Cure Provision.

Edge O Lake Lease Section 5.3 provides:

> Landlord shall in no event be charged with default in the performance of its obligations under this Lease unless and until Landlord shall have received written notice from Tenant specifying wherein Landlord has failed to perform any obligation hereunder ***and Landlord shall have***

---

[1] F&S disingenuously calls the ***first*** written notice of default sent on February 2, 2017 an "additional notice." (Doc. 68 at 12:1). But F&S's Responses to Plaintiffs' Second Set of Interrogatories ***admit*** it is the first written notice of default, and F&S does not dispute that portion of SUF ¶ 26. (*See* Docs. 68-31 at 11–12; 68-3 at 15). F&S's supplemental facts do not cite any other written notice of default. (Doc. 68-3 at 56–63).

[2] Defendants claim STORE argues the Court should grant summary judgment because "Tenant did not obtain prior written consent to the Potential Sublease," and devotes over one page to that purported argument. (*See* Doc. 68 at 24:1–25:3). Yet, as the heading in STORE's Motion even disclaims, STORE's sole argument relates to F&S's failure to provide sufficient notice of default. (Doc. 63 at 19:24–21:11).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

*failed to perform such obligation, or remedy such default, within thirty (30) days (or such additional time as is reasonably required to correct any such default) after Landlord's receipt of such written notice from Tenant*.

(SUF ¶ 11 (emphasis added)).  In claiming Section 5.3 contains no opportunity to cure provision, F&S argues the Court should inexplicably disregard the explicit "within thirty (30) days" language in the provision.  (Doc. 68 at 27:11–16).  In other words, as opposed to reading the provision to permit a lawsuit *only if* a default remains 30 days past receipt of a notice, F&S urges the Court to hold that F&S may sue **even if there is no continuing default** or the default **is already remedied**.  Indeed, F&S goes so far to say that giving effect to the unambiguous 30-day language in the Lease would be "ludicrous" because "Store could never be in breach of the Edge [O Lake] Lease for failing to do any act that had to be performed within thirty days." (Doc. 68 at 25:15–16, 27:11–13).

F&S's argument fails for at least three reasons.  First, the unambiguous 30-day cure period is what the parties contractually bargained for in the Edge O Lake Lease and, therefore, the Court must give it effect.  *See Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002) ("If clear and unambiguous, the literal meaning of the language controls the outcome of contract disputes.").

Second, Tennessee courts have already recognized that similar 30-day cure periods must be enforced.  *See Bristol Preservation, LLC v. IGC-Bristol, LLC*, No. 2:16-CV-360-TAV-MCLC, 2017 U.S. Dist. LEXIS 97937, at *30–31 (E.D. Tenn. June 26, 2017).[3]  *Bristol* involved a claim that a golf course owner-landlord Bristol interfered with golf course tenant IGC's quiet enjoyment rights.  *Id.* at *29.  Like

---

[3] F&S states that *Bristol* is "distinguishable" because "the lease expressly required a thirty day cure period."  (Doc. 68 at 26:5–6 & n.9).  But that language is identical to the language in the Edge O Lake Lease, requiring STORE to "remedy such default" 30 days after receipt of notice.  (SUF ¶ 11).  In other words, *both* the *Bristol* lease and the Edge O Lake Lease have express 30-day cure periods.

4

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

here, the *Bristol* lease was subject to a written notice and 30-day cure period provision. *Id.* at *30. The *Bristol* court strictly construed the provision, recognizing initially that an e-mail did not constitute written notice and, even if it did, the tenant-IGC failed to provide 30 days to cure because tenant-IGC "abandoned the Country Club . . . sixteen days after" sending the e-mail. *Id.* at *31. In other words, within 30 days after written notice was provided in *Bristol*, there was no longer a purported default to cure because tenant-IGC no longer possessed the country club and, thus, the landlord could not continue to violate tenant-IGC's quiet enjoyment. This case is notably clearer than *Bristol* because **at the time F&S sent the notice** (as opposed to after notice was sent), there was no longer a default to cure because there was no longer a Proposed Sublease requiring STORE's consent. F&S jarringly argues *Bristol* is "distinguishable" by only citing to the court's *preliminary analysis* about whether an e-mail is sufficient written notice while omitting reference to the on-point 30-day cure period analysis. (Doc. 68 at 26:4–16). F&S cannot "pick and choose" what portions of cases it wants the Court to review, and F&S's attempt to ignore the on-point portion of *Bristol* approaches a level of violating its counsel's duty of candor owed to the Court.

Finally, Plaintiff claims the Court should disregard the 30-day cure period provision based on a construction defect case that recognized "Tennessee caselaw requires notice and an opportunity to cure construction defects [unless] . . . for instance, a contractor simply walks off a job, or is *entirely* incompetent." *Greg Calfee Builders LLC v. Magee*, 616 S.W.3d 545, 555 (Tenn. Ct. App. 2020); (Doc. 68 at 27:19–20). But this is not a construction defect case and involves no contractors. Indeed, the *Bristol* court rejected the same argument, recognizing (in the landlord-tenant context) the paucity of "authority for the proposition that as a matter of Tennessee law substantial compliance with a notice requirement is sufficient, and the Court declines to announce such a rule itself." 2017 U.S. Dist. LEXIS 97937, at *31 n.9. Further, whether the Potential Sublease (to which STORE

was not a party) "required [STORE's] consent within thirty days," (Doc. 68 at 26:2–3), cannot alter the Edge O Lake Lease's requirement that F&S provide a 30-day cure period.  Like the *Bristol* court, this Court should decline to announce a new rule under Tennessee law that contractual notice provisions can be disregarded.

**B.      F&S Sent a Notice of Default *Months* After the Potential Subtenant Terminated the Potential Sublease, So There Was No Sublease for STORE to Consent to and No Default.**

F&S states that STORE "remains in default" and asks this Court to hold that STORE was required to consent to the Potential Sublease over ***three months after*** Potential Subtenant terminated that sublease.  (Doc. 68 at 25:26–26:3; 27:23).  F&S's argument is nonsensical.  Once Potential Subtenant terminated the Potential Sublease on November 10, 2016, STORE could not approve any such Potential Sublease.  (SUF ¶ 24).  Indeed, F&S's purported "notice of default" sent three months later does not ask STORE to approve a nonexistent Potential Sublease.  (*See* Doc. 63-32).  And the Edge O Lake Lease merely provides "**[w]henever Landlord's approval or consent is expressly required under this Lease**, such shall not [be] unreasonably withheld, conditioned or delayed."  (SUF ¶ 12 (emphasis added)).  F&S has not (and cannot) identify any Lease provision requiring STORE to consent to a **terminated** (and, thus, ineffectual) Potential Sublease; thus, after the Potential Sublease was terminated, STORE could no longer be in default.

This situation is similar to *Bristol*.  There, the Court recognized that once the tenant had abandoned the country club, there was no longer a continuing default.  2017 U.S. Dist. LEXIS 97937, at *31.  And because the tenant abandoned the country club before the 30-day cure period expired, the tenant could not sue the landlord for the purported breach of quiet enjoyment.  *Id.*  Thus, as in *Bristol*, the 30-day cure period did not complete (and never even started) given F&S's notice was sent *three months after* the Potential Sublease had terminated.  Because at the time the notice was sent there was nothing for STORE to consent to, there was no continuing default and F&S cannot sue STORE.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

PLAINTIFFS' AND COUNTERDEFENDANT'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT (COUNTERCLAIMS AND COUNTS I, II, VI, AND VII): NO.  8:20-cv-00953

### C.   Claims for Breach of the Covenant of Good Faith and Fair Dealing Are Inherently Tied to Breach of Contract Claims.

"Tennessee law does not recognize a claim for breach of the duty of good faith and fair dealing as a cause of action in and of itself," and instead it is part of a breach of contract claim. *EPAC Techs., Inc. v. Thomas Nelson, Inc.*, No. 3-12-0463, 2015 U.S. Dist. LEXIS 151659, at *9–10 (M.D. Tenn. Nov. 9, 2015) (citation omitted). As a result, a "breach of implied covenant of good faith and fair dealing cannot stand absent a concurrent breach of contract action." *Gentry-Youngblood v. MHC Mortg. Inc.*, No. 1:15-cv-123, 2016 U.S. Dist. LEXIS 71877, at *17 (E.D. Tenn. June 2, 2016) (citation omitted).

Further, granting summary judgment on F&S's breach of the covenant of good faith and fair dealing claim is necessary here. "The implied obligation of good faith and fair dealing does not . . . create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement." *Coleman v. Wells Fargo Banks, N.A.*, 218 F. Supp. 3d 597, 607 (M.D. Tenn. 2016) (citation and quotation marks omitted). Here, F&S is impermissibly attempting to use the covenant of good faith and fair dealing to bypass the Edge O Lake Lease's notice provision. Because F&S cannot use the covenant of good faith and fair dealing to bypass the notice provision, the Court should grant summary judgment in STORE's favor on F&S's Counterclaim Count II as well as Counterclaim Count I.

## II.   Defendants Do Not Identify Any Authority or Disputed Facts to Avoid Summary Judgment as to Liability on FAC Counts I and II for Failing to Maintain the Preston Highway Property HVAC Units.

The Motion requests that the Court grant summary judgment on FAC Counts I and II on liability only because Defendants breached the Preston Highway Lease § 3 (and respective guaranty agreement) by failing to repair or compensate STORE Master for 15 HVAC units that were heavily vandalized during F&S's tenancy. (Doc. 63 at 13:27–14:2, 22:4–23:24). As is clear from STORE Master's Motion, STORE Master is *not* asking the Court to grant summary judgment on the *amount*

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

---

7

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

of disrepair to the Preston Highway Property, just that F&S breached Preston Highway Lease § 3 in an amount to be proven at trial.

Despite the limited relief requested by STORE Master, much of Defendants' Opposition focuses on *other* repairs, such as roof repairs and other "deferred maintenance." (Doc. 68 at 28:22–29:7, 29:22–30:3.) But as STORE Master's Motion explicitly notes, whether *other* damage to the Preston Highway Property can be considered ordinary wear and tear is an issue STORE Master is reserving for a factfinder. (Doc. 63 at 23 n.3.) What is undisputed is the following:

- F&S (and by virtue of its guaranty agreement, FI) was required to maintain the Preston Highway Property "in good condition, reasonable wear and tear excepted and shall also maintain all heating, ventilating and air conditioning systems located at the Leased Premises," (SUF ¶ 29);

- The 15 HVAC units at the Preston Highway Property were "destroyed" during F&S's tenancy by "vandalism," (SUF ¶ 30);

- FI received $40,746.32 from an insurance claim for the 15 HVAC units, (SUF ¶ 32); and

- Defendants have neither compensated STORE Master for the damage nor repaired the HVAC units, (SUF ¶ 36).[4]

Under these undisputed facts, Defendants have breached Preston Highway Lease Section 3 and the guaranty agreement in an amount to be proven at trial.

Defendants cite a few irrelevant facts they claim to create a factual dispute. For example, Defendants suggest that communications about ***when*** STORE Master would replace the HVAC units or whether STORE Master plans to sell the Preston Highway Property "as is" create a factual dispute. (Doc. 68 at 29:7–21.) But that inquiry is irrelevant to whether Defendants breached their contractual obligations and, at most, goes to damages (which are not part of STORE Master's Motion)[5].

---

[4] F&S states that "Tenant made some repairs to the Preston Highway Premises," but does not specify that any of those repairs were made to the 15 HVAC Units and the cited evidence does not support F&S's statement. (Doc. 68-3 at 21–22.)

[5] Even if STORE Master planned to sell the building "as is," a building with operational HVAC units is clearly worth more than a building with non-functional HVAC units, so Defendants' arguments are nonsensical.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Finally, Defendants assert that the Court should not grant summary judgment because Defendants have four affirmative defenses.  (Doc. 68 at 30:5–11).  As an initial matter, Defendants provide the Court *with no supporting facts* to show how these affirmative defenses preclude entry of judgment.  Moreover, Defendants' suggestion that STORE Master must disprove these blanket affirmative defenses is routinely rejected by courts.  *See SEC v. Schooler*, 106 F. Supp. 3d 1157, 1161 n.1 (S.D. Cal. 2015) (rejecting argument "that, on summary judgment, the evidentiary burden is on the [plaintiff] to disprove an affirmative defense" (citing *Celotex*, 477 U.S. at 323 ("[W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.")))).   Second, these affirmative defenses are nonsensical—for example, Defendants' allegation that STORE Master "failed to maintain the Premises" has no connection to *vandalism*.  Further, *F&S* had the undisputed right of possession of the Preston Highway Property at the time of the vandalism under the triple-net Preston Highway Lease.[6]   (SUF ¶¶ 1, 30).   It is not the Court's responsibility to divine what facts and legal arguments support Defendants' affirmative defenses and simply pleading affirmative defenses cannot prevent entry of summary judgment.  *See* L.R. 56-3.

## III.   Defendants Provide No Legal Justification for Their Refusal to Pay Amounts Owed Under the Leases (FAC Counts VI and VII)

Despite admitting to having the *ability* to make monetary payments under the Edge O Lake Lease, Blake James Lease, and Wellington Lease since April 2020, Defendants have withheld **$1,271,411.59** in payments between April 2020 and May 2021[7].  Defendants do not dispute the *amount* owed between April 2020 and May

---

[6] Indeed, it would be tantamount to insurance fraud if Defendants filed insurance claims for properties they had no "right of control or right of possession."  (SUF ¶ 32).

[7] Since the Motion was filed in May 2020, Defendants have unsurprisingly continued to refuse to pay amounts owed under the Leases for June 2021.  For this reason, STORE SPE is requesting the Court order Defendants must pay $1,271,411.59 (the

2021 and instead argue their obligations to pay were excused. (Doc. 68-3 at 45–51). Notably, Defendants' dispute of facts is telling—for example, Defendants admit they have been able to operate in Kentucky since after May 31, 2020. (Doc. 68 at 9:9). Yet, Defendants dispute whether they owe Common Area Charges under the Wellington Lease from April 2020 through *May 2021* under the doctrines of force majeure, "frustration of purpose, impossibility, and impracticability." (Doc. 68-3 at 46–47). In other words, Defendants are unseemly arguing that the Court should recognize that government closure orders *that expired over one year ago* currently permit Defendants to withhold payments under the Leases. As a matter of law, Defendants are not entitled to the windfall they seek under any provision of the Leases or any common law doctrine.

### A. No "Force Majeure" Event *Caused* Defendants' Refusal to Make Monetary Payments Under the Leases.

Each of the force majeure provisions in the Edge O Lake, Blake James, and Wellington Leases contain a *causal* element—the force majeure event must *cause* nonperformance under each Lease to excuse the nonperformance, as reflected below:

- **Edge O Lake and Blake James Leases:** "If either party is delayed or prevented from any of its obligations under this Lease *by reason of*" a force majeure event," (SUF ¶ 47 (emphasis added)); and

- **Wellington Lease:** (1) "In the event either party hereto shall be delayed or hindered in or prevented from the performance required hereunder *by reason of*" a force majeure event"; and (2) "Neither Landlord nor Tenant shall be liable to the other for any breach or violation of this Lease *resulting from any*" force majeure event, (SUF ¶¶ 48, 49 (emphasis added)).

*See Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008) (recognizing where contractual language is "clear and unambiguous, the literal meaning controls the outcome of the dispute"); *see also Abney v. Nationwide Mut.*

---

amount owed between April 2020 and May 2021) *in addition to* any further amounts Defendants refuse to pay under the Leases through entry of judgment.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

*Ins. Co.*, 215 S.W.3d 699, 703 (Ky. 2006) (same).

But beyond the Leases' language alone, Kentucky and Tennessee case law also supports that contractual obligations are excused ***only if*** the force majeure event ***causes*** a party's nonperformance of contractual obligations.  Indeed, as Defendants' Opposition acknowledges, the court in *Emerald Int'l Corp. v. WWMV, LLC* rejected application of a force majeure provision despite a government order purportedly preventing a party from supplying coal from a specific source.  No. 15-179-WOB-JGW, 2016 U.S. Dist. LEXIS 107340, at *7–11 (E.D. Ky. Aug. 15, 2016); (Doc. 68 at 18 n.2).  The Court recognized that because performance under the contract—i.e., supplying coal—was still possible from other sources, the government orders could not excuse performance.  *Id.*; *see also id.* at *7 ("The force majeure provision was not triggered because WWMV's proffered events did not *cause* its nonperformance." (emphasis in original)).  The law is identical in Tennessee.  *See, e.g.*, *Bayader Fooder Trading, LLC v. Wright*, No. 13-2856, 2014 U.S. Dist. LEXIS 149191, at *9 (W.D. Tenn. Oct. 21, 2014) ("In Tennessee, an unforeseen event that *causes* impossibility of performance of a contract may be used as a defense" (emphasis added)); *see also id.* at *9 (noting the performance sought to be excused "must have been impossible" (citing *Bryan v. Spurgin*, 37 Tenn. 681 (1858))).

Defendants do not dispute that they have *always* had the ability to pay their monetary obligations under the Leases, which is the performance they are seeking to excuse.  (*See* Doc. 63-41 at 9–12 (repeating three times "It is admitted that Defendants have never taken the position in this action that they had an inability to pay rent due to insufficient funds" and quoting this Court's order that Defendants "are not asserting as a defense the inability to pay due to insufficient funds")).  Instead of claiming an inability to pay, Defendants claim their payment obligations were excused because "it was illegal for Tenant to use the James, Wellington, and Edge Premises."  (Doc. 68 at 18:7)  But STORE is not suing Defendants for failing to continuously operate or use each Property—instead, STORE is suing for payment

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

11

of funds Defendants undisputedly could pay.  Thus, no force majeure event *caused* Defendants' nonpayment under the Leases.

Defendants cite no authority from Kentucky or Tennessee indicating there need not be a causal relationship between nonperformance and the force majeure event.  Rather, Defendants cite to a Florida Bankruptcy Court decision, *In re: Cinemex Real Estate Holdings, Inc.*, for that proposition.  No. 20-14695-BKC-LMI, 2021 Bankr. LEXIS 200 (S.D. Fla. Jan. 26, 2021); (Doc. 68 at 18:24–19:13).  But even if *Cinemex* was somehow applicable, that case is of no assistance.  *Cinemex* recognized that under *Florida* law, the force majeure provision of a lease excused payment of "rent until the Lakeside Theater was allowed to reopen."  *Id.* at *16.  In other words, like the force majeure clauses at issue, the performance was merely delayed *not excused*.[8]  Defendants cite no authority that payments are *excused*.

Here, under the provisions of the three Leases, even assuming Defendants' inability to use the Properties caused its nonperformance (which is contradicted by Defendants' binding admissions), the nonperformance would only have been *delayed* (not excused) until Defendants were able to operate in Tennessee (May 25, 2020) and Kentucky (May 31, 2020).  (Doc. 68 at 9:9–10, 9:24–26).  Thus, even under *Cinemex*, the monetary obligations that became due when Defendants were unable to operate have now become due given it has been *over one year* since Defendants have been able to operate.

### B.   Neither the Impossibility Doctrine Nor the Supervening Impracticability Doctrine Applies

Defendants cite no case law disputing the proposition in the Motion that "[l]ike the force majeure provisions, the impossibility doctrine only applies if the impossibility is *caused* by an unforeseen event" and "the supervening impracticability doctrine only applies when the event causing the impracticability

---

[8] The lease at issue in *Cinemex* contained provisions that extended the term of the lease for the period of time for nonperformance, which makes that lease distinguishable from the subject Leases.  2021 Bankr. LEXIS 200, at *16.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

causes 'extreme and unreasonable difficulty, expense, injury, or loss to one of the parties.'"   (Doc. 63 at 26:14–15, 27:10–13 (citing Kentucky and Tennessee authority)).

Rather, Defendants assert that "[f]or the Closure Periods, Tenant lost all of its revenue from dues-paying members."  (Doc. 68 at 23:1–2).  Notably, Defendants stop short of claiming payment of rent was *impossible* or even *extremely difficult* during the Closure Period.  Indeed, when Plaintiffs sought discovery about any difficulty Defendants experienced in paying rent, Defendants asserted and the Court found (in denying Plaintiffs' motion to compel Defendants' financial information) that Defendants were ***not*** claiming payment of rent under the Leases "was impossible because they could not pay rent or due to lack of funds."  (Doc. 52 at 2; SUF ¶ 63; Doc. 63-41 at 11:25–26 ("It is admitted that Defendants have never taken the position in this action that they had an inability to pay rent due to insufficient funds.")).  Thus, Defendants cannot suddenly claim (and, indeed, have stopped short of actually claiming) that the financial information they avowed to the Court was ***not*** part of their defenses is now relevant.  Defendants do not and cannot argue that payment of rent was impossible or extremely difficult during the relevant time periods and, thus, the impossibility and impracticability doctrines do not apply.

## C. Government Closure Orders Have Not Totally or Nearly Destroyed the Purposes of the Leases

Under both Kentucky and Tennessee law, the frustration of purpose doctrine applies only in ***rare*** cases where "the total or nearly total destruction of the purpose for which, in the contemplation of both parties, the transaction was entered into." *Frazier v. Collins*, 300 Ky. 18, 21 (Ky. Ct. App. 1945); *see also Haun v. King*, 690 S.W.2d 869, 871 (Tenn. Ct. App. 1984) ("The doctrine of frustration of commercial purpose . . . is if the happening of an event, not foreseen by the parties to the contract and neither caused by nor under the control of either party, has destroyed or nearly destroyed either the value of performance or the object or purpose of the contract

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

then the parties are excused from further performance.").

Defendants gloss over the rarity of the doctrine under Kentucky and Tennessee law through blatant misrepresentations to the Court. For example, Defendants cite *Frazier* as applying the frustration of purpose doctrine "to excuse performance under a lease." (Doc. 68 at 19:17–22). Yet, the *Frazier* court held the doctrine was ***inapplicable*** and reversed the trial court because wartime restrictions ***did not frustrate*** the purpose of a filling station. 300 Ky. at 22. Defendants also extensively quote from a New Mexico case (*Wood v. Bartolino*) that the *Frazier* court quoted but ultimately ***did not follow***, and no other Kentucky courts have even cited to *Wood* since. *Id.* Moreover, Defendants simply ignore the main case cited by the Motion (*Williams v. Whitehead*), under which the court found inapplicable the frustration of purpose doctrine because the event purportedly frustrating the lease could potentially be corrected and, thus, was not permanent. 854 S.W.2d 895, 897 (Tenn. Ct. App. 1993).

Defendants' misrepresentations of applicable law segue into Defendants' citation to two cases outside of Kentucky and Tennessee (including a Massachusetts Superior Court order) that are more akin to Defendants' misrepresentations of law than actual Kentucky and Tennessee law. (Doc. 68 at 19–21). For example, Defendants cite to a Michigan District Court decision (*Bay City Realty, LLC v. Mattress Firm, Inc.*) that recognizes its holding is based on the court's belief that "Michigan courts would . . . adopt" the doctrine of "temporary frustration." No. 20-CV-11498, 2021 U.S. Dist. LEXIS 67054, at *30 (E.D. Mich. Apr. 7, 2021). Yet, "temporary frustration" (or anything other than the total or near total destruction of a lease's purpose) has not been recognized under Kentucky or Tennessee law. *See Frazier*, 300 Ky. at 21; *Williams*, 854 S.W.2d at 897.

Rather, Kentucky and Tennessee law is more similar to the persuasive authority cited in the Motion that recognizes the temporary shutdown of a New York gym "does not invalidate obligations in a fifteen-year lease." *CAB Bedford LLC v.*

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

14

*Equinox Bedford Ave, Inc.*, No. 652535/2020, 2020 N.Y. Misc. LEXIS 10861, at *3–6 (N.Y. Sup. Ct. Dec. 22, 2020); (Doc. 63 at 28:10–26 (citing authority)).

But even if the Court sought to expand Kentucky and Tennessee law by following the idea of "temporary frustration" cited by Defendants, those cases would not even be applicable.  For example, the Massachusetts Superior Court case *UMNV 205-207 Newbury, LLC v. Caffe Nero Ams., Inc.* recognized its finding of temporary frustration only applied where properties were unable to be used for anything besides the temporarily frustrated purpose.  No. 2084CV01493-BLS2, 2021 Mass. Super. LEXIS 12, at *12–13 (Mass. Superior Court Feb. 8, 2021).  But at the very least the Blake James and Edge O Lake Leases *could* be used for purposes other than health clubs with STORE's consent.  (*See* Docs. 63-6 at 5 § 1.1(d); 63-7 at 5 § 1.1(d)).  Thus, these two out-of-jurisdiction "temporary frustration" cases are not only inconsistent with Kentucky and Tennessee law but also factually inapplicable.

### D.   Adequate Consideration Continues to Support the Leases.

Defendants claim that an inquiry into whether there has been a failure of consideration is "fact-intensive," but fail to describe what facts make this inquiry fact intensive.  (Doc. 68 at 23:6–22).  Indeed, the cases cited in the Motion (unaddressed by Defendants' Opposition) seamlessly recognized *as a matter of law* that government closure orders did not deprive tenants of consideration.  *See, e.g.*, *Gap Inc. v. Ponte Gadea N.Y. LLC*, No. 20 CV 4541-LTS-KHP, 2021 U.S. Dist. LEXIS 42964, at *29 (S.D.N.Y. Mar. 8, 2021) (holding a failure consideration defense "unavailing" because the tenant "continued to receive the consideration promised under the Lease—retail premises for its operations—from the defendant landlord during the course of the COVID-19 pandemic") *Equinox Bedford*, 2020 N.Y. Misc. LEXIS 10861, at *6–7 (rejecting failure of consideration argument because "[t]his is not a case where they are forbidden from running a gym ever again at the premises").

Further, Defendants again misconstrue applicable law, claiming *Luigart v.*

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

*Fed Parquetry Mfg. Co.* (recognizing valid consideration "may be doing or the promising to do something not illegal, at the request of the promisor") supports their argument because "it was illegal for Tenant to use the Premises for its purpose." 238 S.W. 758, 760–61 (Ky. Ct. App. 1922); (Doc. 68 at 23:17–22). Yet, STORE and F&S's transaction has never been "illegal"—STORE provided F&S a property right in the Properties in exchange for *legal* monetary payments. Indeed, *F&S has not even used the Edge O Lake Property* since at least May 2016. (SUF ¶ 14). F&S has always retained a property *right* from STORE as to the three Properties and that right is sufficient consideration.

### E.   There Has Been No Condemnation of the Properties

Defendants completely ignore the Motion's case law recognizing that condemnation is not an applicable defense for nonpayment of monetary obligations under the Edge O Lake or Blake James Leases; instead, Defendants state that asserting the affirmative defense by itself (and without any supporting argument or facts) can overcome summary judgment. (Doc. 68 at 30:13–31:10). Yet, the *TJM 64, Inc. v. Harris* case cited in the Motion has already held, in a temporary restraining order context, that plaintiff-business owners were unlikely to succeed in showing that Tennessee closure orders constituted regulatory takings. 475 F. Supp. 3d 828, 837–40 (W.D. Tenn. 2020) (recognizing government orders responding to the COVID-19 pandemic did not deprive business owners of "*all* the economic value in their property" and the "Closure order was not for a 'public use' but was instead a valid exercise of the broad police powers bestowed upon state and local officials"). This holding is akin to the other persuasive authority cited in the Motion that Defendants simply ignore. *See 1600 Walnut Corp. v. Cole Haan Co.*, No. 20-4223, 2021 U.S. Dist. LEXIS 60156, at *8 (E.D. Pa. Mar. 30, 2021) ("The COVID-19 Executive Orders Do Not Constitute a Taking").

More fundamentally, Defendants have failed to meet their burden under the summary judgment standard. Instead of citing to "to the record in support of the

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

---

16

allegations made in the pleadings to demonstrate that a genuine controversy requiring adjudication by a trier of fact exists," *Taybron v. City & County of San Francisco*, 341 F.3d 957, 960 (9th Cir. 2003), Defendants simply state that a taking is a "fact-intensive inquiry," (Doc. 68 at 31:3). Even "fact-intensive" inquiries can be resolved on summary judgment where the facts are undisputed and tilt to one party. *See, e.g.*, *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1075 (9th Cir. 2006). By failing to ***cite any facts*** in support of their claim that a taking has occurred, Defendants have failed to meet their burden at summary judgment. *See Celotex*, 477 U.S. at 323.

**IV.   By Virtue of Its Guaranty Agreements, FI Is Also Responsible for F&S's Payment Obligations Under the Edge O Lake Lease, Blake James Lease, Wellington Lease, and Is Liable Under Preston Highway Lease Section 3.**

Defendants do not dispute that where a tenant fails to meet its obligations under a lease, a guarantor becomes liable for the tenant's failure. *See Vesey Air, LLC v. Mayberry Aviation, LLC*, No. 1:09-CV00011-TBR, 2010 U.S. Dist. LEXIS 89145, at *9–10 (W.D. Ky. Aug. 27, 2010); *MLG Enters., LLC v. Johnson*, 507 S.W.3d 183, 191 (Tenn. 2016).

Here, because FI signed Guaranty Agreements for which it agreed to be "jointly and severally bound" with F&S for the performance of F&S's obligations under the Edge O Lake Lease, Blake James Lease, Wellington Lease, and Preston Highway Lease, the Court should grant summary judgment in STORE's favor as to FAC Counts II (on liability only) and VII (as to both damages and liability).

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Partial Summary Judgment, granting judgment in STORE Master's favor as to liability alone under FAC Counts I and II; granting judgment in STORE's favor in an amount of amount of **$1,271,411.59** (plus any further unpaid amounts before judgment is entered) under FAC Counts VI and VII; and granting judgment in STORE's favor as to F&S's two Counterclaims.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

DATED this 14th day of June, 2021.

**BALLARD SPAHR LLP**

By: */s/ Craig S. Ganz*
    Craig S. Ganz
    Mitchell L. Turbenson
    2029 Century Park East, Suite 800
    Los Angeles, CA 90067-2909
    *Attorneys for Plaintiffs and*
    *Counterdefendant*

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

PLAINTIFFS' AND COUNTERDEFENDANT'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY
JUDGMENT (COUNTERCLAIMS AND COUNTS I, II, VI, AND VII): NO. 8:20-cv-00953

## CERTIFICATE OF SERVICE

I certify that on this 14th day of June, 2021, I electronically filed PLAINTIFFS STORE SPE LA FITNESS 2013-7, LLC'S AND STORE MASTER FUNDING V, LLC'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT with the Clerk of the Court for the United States District Court, Central District of California, using the CM/ECF system and served a copy of the same upon all counsel of record via the Court's electronic filing system.

_/s/ Vicki L. Morgan_

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

PLAINTIFFS' AND COUNTERDEFENDANT'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT (COUNTERCLAIMS AND COUNTS I, II, VI, AND VII): NO.  8:20-cv-00953