## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-953 JVS(ADSx) | Date | June 30, 2021 |
|---|---|---|---|

| Title | STORE SPE LA Fitness et al. V. Fitness International, LLC et al. |
|---|---|

Present: The Honorable      **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:    [IN CHAMBERS] Order Regarding Motion for Partial Summary Judgment**

Plaintiffs STORE SPE LA FITNESS 2013-7, LLC, ("STORE") and STORE MASTER FUNDING V, LLC, ("STORE Master") (together, "Plaintiffs") move for partial summary judgment as to counts I, II, VI, and VII of the First Amended Complaint ("FAC") asserted against Fitness International, LLC, ("Fitness International") and Fitness & Sports Clubs, LLC, ("Fitness & Sports") (together, "Defendants"). Mot., Dkt. No. 63. Defendants filed an opposition. Opp'n, Dkt  No. 68. Plaintiffs filed a response. Reply, Dkt. No. 70 .

For the following reasons, the Court **GRANTS** the motion.

### I. BACKGROUND

STORE Master was formerly the landlord of a commercial property that tenant Fitness & Sports operated as a fitness center (the "Preston Highway Property"), and the parties' relationship is governed by an Amended and Restated Lease (the "Preston Highway Lease"). Statement of Uncontroverted Facts ("SUF") ¶¶ 1, 5.  Fitness & Sports is currently the tenant (and STORE is the landlord) of three commercial properties that Fitness & Sports operates (or formerly operated) as fitness centers (the "Edge O Lake Property," "Blake James Property," and "Wellington Property"), and the parties' relationship is governed by three separate leases (the "Edge O Lake Lease," "Blake James Lease," and "Wellington Lease"). Id. ¶¶ 2–4, 6. Fitness International signed Guaranty Agreements in which it agreed to be "jointly and severally bound with" Fitness & Sports for its performance under each of the aforementioned leases. Id. ¶¶ 7–9. The Preston Highway, Blake James, and Wellington Properties are all located in Kentucky and their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-953 JVS(ADSx)                    Date    June 30, 2021

Title    STORE SPE LA Fitness et al. V. Fitness International, LLC et al.

respective leases are governed by Kentucky law, while the Edge O Lake property is located in Tennessee and ia governed by Tennessee law. Id. ¶ 10.

### i. The Preston Highway Lease

Fitness & Sports agreed under Section 3 of the Preston Highway Lease that it "shall maintain the Leased Premises in good condition, reasonable wear and tear excepted and shall also maintain all heating, ventilating and air conditioning systems located at the Leased Premises." Id. ¶ 29.

Around July 2017, during Fitness & Sports' tenancy, 15 HVAC rooftop units at the Preston Highway Property were "destroyed" by "vandalism." Id. ¶ 30[1]. In January 2018, Fitness International filed an insurance sworn statement in partial proof of loss claiming a "statement of loss" from the destruction of the 15 HVAC rooftop units and asserting that the loss was caused by "Theft/ Vandalism." Id. ¶ 31. In September 2019, STORE Master provided Fitness International a list of items that "will need to be addressed prior to lease termination" and requested information on how FI preferred to "handle these matters, either through insurance claim or other avenues." Id.  ¶ 34. These items included roof leaks, inoperable HVAC units, inoperable lighting, overhead doors "barely hanging on," exterior paint in bad condition, and asphalt with potholes in the parking lot. Id. Fitness International's Director of Lease Administration told STORE that "Tenant's preference would be to come to an agreement on a scope of work and cost to repair, with Tenant surrendering the location to Landlord 'as is,' but paying Landlord the agreed upon cost." Id. ¶ 35.

---

[1] The Court is aware that Defendants dispute the timing of when the email was sent about the vandalism occurred, but the Statement of Genuine disputes ("SGD") does not appear to dispute the fact that the loss was asserted as being due to theft/ vandalism. See SGD, Dkt. No. 68-3 ¶ 30. When resolving a motion for summary judgment, courts may only consider admissible evidence. Fed. R. Civ. P. 56.  On a motion for summary judgment, a party may object that the material used to "dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).  A court must rule on material evidentiary objections.  Norse v. City of Santa Cruz, 629 F.3d 966, 973 (9th Cir. 2010). The Court only considered admissible evidence in resolving Plaintiffs' motion for summary judgment. When the order cites evidence to which the parties have objected, the objection is impliedly overruled.  Additionally, the Court declines to rule on objections to evidence upon which it did not rely.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-953 JVS(ADSx) | Date | June 30, 2021 |
|---|---|---|---|

| Title | STORE SPE LA Fitness et al. V. Fitness International, LLC et al. |
|---|---|

While Fitness International has thus far received $40,746.32 in insurance proceeds from the 15 HVAC rooftop units, neither Fitness International nor Fitness & Sports has paid STORE Master for the damage caused to the Preston Highway Property under Fitness & Sports' tenancy. Id. ¶¶ 32, 36, 37. Defendants assert that they have made some repairs to the Preston Highway Premises. SGD, Dkt. No. 68-3 ¶ 36.

*ii. The Edge O Lake Lease, Blake James Lease, and Wellington Lease*

Fitness & Sports is required to pay STORE $49,500.00 per month in rent under the Edge O Lake Lease,  $68,750.00 per month in rent under the Blake James Lease, and $63,250.00 per month in rent under the Wellington Lease. Id. ¶¶ 38–40. Under the Wellington Lease, late payments are subject to a 5% surcharge. Id. ¶ 41. Under each of the three Leases, Fitness & Sports agreed to pay taxes related to the properties, which, for 2020 and 2021, amounted to: $5,162.15 per month under the Edge O Lake Lease, $11,522.42 per month under the Wellington Lease, and $13,334.91 per month under the Blake James Lease. Id. ¶ 43. Under the Wellington Lease, Fitness & Sports agreed to pay common area expenses for the property, including "costs of landscaping, lot sweeping, painting, security, parking lot lighting, patching and sealing, water usage, trash removal, public liability insurance, management fees, and other normal, customary and reasonable expenses." Id. ¶ 44. STORE approximated these common area expenses each year and 1/12 of that approximation is charged to Fitness & Sports each month. Id.¶ 45. For 2020 and 2021, STORE estimated that common area expenses under the Wellington Lease would be $22,356.00 per year ($1,863.00 per month). Id. ¶ 46.

On March 6, 2020, the Kentucky Governor issued Executive Order 2020-215, declaring a COVID-19 State of Emergency in Kentucky. See Defendants' RJN, Dkt. No. 69  ¶ 1. On March 17, the Governor issued Executive Order 2020-317, directing that all gyms cease all in-person operations to "reduce and slow the spread of COVID-19." Id. ¶ 2.

On March 17, 2020, Fitness International informed STORE that it closed all of its "health clubs throughout the United States and Canada effective as of March 16, 2020" and would suspend payments under its leases. Id. ¶ 54. Since April 2020, Fitness & Sports has failed to pay amounts owed under the leases. SUF ¶ 62.
Gyms and fitness centers were permitted to reopen in Kentucky on June 1, 2020 with severe restrictions. Defendants' RJN, Dkt. No. 69  ¶ 3. Since being legally permitted to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-953 JVS(ADSx)                    Date   June 30, 2021

Title   STORE SPE LA Fitness et al. V. Fitness International, LLC et al.

reopen, Defendants state that they have paid rent in full. DDA Decl. ¶¶ 53-57.

Each Lease contains at least one force majeure provision. SUF ¶¶ 47-49.

    *iii. Counterclaims*

Defendants assert two Counterclaims against Plaintiffs under the Edge O Lake Lease, alleging that in 2016, STORE unreasonably withheld consent as to a potential sublease entered into by Fitness & Sports and a Potential Subtenant. See Amended Answer and Counterclaim, Dkt. No.  53 ¶¶ 29–47. The Edge O Lake Lease prescribes the conditions precedent that Fitness & Sports must satisfy before it may assert a contractual claim against STORE, providing:

> [STORE] shall in no event be charged with default in the performance of its obligations under this Lease, unless and until [STORE] shall have received written notice from [F&S] specifying wherein [STORE] has failed to perform any obligation hereunder, and [STORE] shall have failed to perform such obligation, or remedy such default, within thirty (30) days . . . after [STORE's] receipt of such written notice from [F&S].

Id. ¶ 11. The Edge O Lake Lease also provides that "[w]henever [STORE's] approval or consent is expressly required under this Lease, such shall not [be] unreasonably withheld, conditioned or delayed" and that entering into a sublease requires STORE's "prior written consent." Id. ¶¶ 12–13.

In May 2016, Fitness International informed STORE that Fitness & Sports would vacate the Edge O Lake Property but would "continue to meet [its] monetary obligations under the Lease." Id. ¶ 14. October 5, 2016, Fitness & Sports executed a potential sublease with a potential subtenant that would change the use of the Edge O Lake Property from a fitness center to "an automated retail pharmacy and call center." Id. ¶¶ 15, 16. The potential subtenant also sought to spend between $150,000 and $200,000 to renovate the property. Id. ¶ 19. On October 11, 2016, after Fitness & Sports entered into the potential sublease, it sent the potential sublease to STORE for approval. Id. ¶¶ 17, 18. On that same day, STORE informed Fitness & Sports that there might be a delay in approval given that STORE was required to obtain its lender's consent before providing consent to the potential sublease. Id. ¶ 18. Over the next two weeks, STORE sought

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-953 JVS(ADSx) | Date | June 30, 2021 |
|---|---|---|---|

| Title | STORE SPE LA Fitness et al. V. Fitness International, LLC et al. |
|---|---|

details about the renovations that the potential subtenant intended to perform. Id. ¶¶ 19, 20. Around three weeks after receiving the potential sublease, STORE provided the potential subtenant with proposed revisions as well as a proposed consent/ recognition agreement. Id. ¶ 21. Among other things, STORE (i) expressed concern that the potential sublease would lower property value and (ii) implied that it would condition its consent on Fitness & Sports providing a deposit to cover the cost to return the premises to a fitness facility after the potential subtenant vacated the property, a condition not required by the Lease. DDA Decl. ¶ 41, Ex. I.

Despite STORE following-up with the potential subtenant twice, the subtenant did not respond to STORE. SUF ¶¶ 22, 23. On November 10, 2016, the potential subtenant informed Fitness & Sports that it would not be going forward with the potential sublease. Id. ¶ 24. The next day, Fitness & Sports informed STORE that the potential subtenant had terminated the potential sublease. Id. ¶ 25. On February 2, 2017, Fitness International sent STORE a letter claiming that STORE did not timely consent to the potential sublease. Id. ¶¶ 26, 27. The February 2, 2017 letter did not request that STORE take any action and, instead, stated that STORE should "govern [it]self accordingly" and referenced potential approvals for subleases "in the future." Id. ¶ 28.

## II. LEGAL STANDARD

Summary judgment is appropriate where the record, read in the light most favorable to the nonmovant, indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Summary adjudication, or partial summary judgment "upon all or any part of [a] claim," is appropriate where there is no genuine dispute as to any material fact regarding that portion of the claim. Fed. R. Civ. P. 56(a); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks omitted).

Material facts are those necessary to the proof or defense of a claim, and are determined by referring to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-953 JVS(ADSx)                Date    June 30, 2021

Title    STORE SPE LA Fitness et al. V. Fitness International, LLC et al.

Anderson, 477 U.S. at 255.[2]

The moving party has the initial burden of establishing the absence of a material fact for trial. Anderson, 477 U.S. at 256. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). Furthermore, "Rule 56[(a)][3] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Therefore, if the nonmovant does not make a sufficient showing to establish the elements of its claims, the Court must grant the motion.

### III. DISCUSSION

#### A. Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing Counterclaims

Plaintiffs first move for summary judgment with respect to Defendants' counterclaims, arguing that Defendants did not provide STORE/ STORE Master with written notice and a 30-day opportunity to cure as required by the Edge O Lake Lease. Mot., Dkt. No. 63, at 10–12. Defendants argue in response that there are material disputed facts regarding STORE's consent to the sublease, noting that the potential sublease expressly provided that it was conditioned upon receipt of STORE's consent, and that the evidence shows that the potential subtenant declined to continue with the sublease only because STORE did not timely provide its consent. Opp'n., Dkt. No. 68, at 18. Defendants further argue that the Edge O Lake Lease does not require that they provide Plaintiffs with an opportunity to cure. Id., at 25.

---

[2] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." L.R. 56-3.

[3] Rule 56 was amended in 2010. Subdivision (a), as amended, "carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'" Fed. R. Civ. P. 56, Notes of Advisory Committee on 2010 amendments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-953 JVS(ADSx)                Date   June 30, 2021

Title   STORE SPE LA Fitness et al. V. Fitness International, LLC et al.

Under both Tennessee and Kentucky law, a breach of contract claim requires "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract." ARC Lifemed, Inc. v. AMC-Tenn., Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005); see Sudamax Industria e Comercio de Cigarros, LTDA v. Buttes & Ashes, Inc., 516 F. Supp. 2d 841, 845 (W.D. Ky. 2007) (same elements under Kentucky law). "It is well settled that the construction of a written contract is a matter of law to be decided by the court." Bank of Am., N.A. v. Corporex Realty & Inv., LLC, 875 F. Supp. 2d 689, 708 (E.D. Ky. 2012). "[A] commercial lease is to be construed and enforced as written." Bristol Preservation, LLC v. IGC-Bristol, LLC, 2017 WL 2773663, at *1 (E.D. Tenn. June 26, 2017) (quoting In re Memphis-Friday's Associates, 88 B.R. 830, 837 (W.D. Tenn. 1988)). If the language in a contract "is clear and unambiguous, the literal meaning controls the outcome of the dispute." Maggart v. Almany Realtors, Inc., 259 S.W.3d 700, 704 (Tenn. 2008); see also Abney v. Nationwide Mut. Ins. Co., 215 S.W.3d 699, 703 (Ky. 2006).

Regarding the breach of the covenant of good faith and fair dealing, "Tennessee law does not recognize a claim for breach of the duty of good faith and fair dealing as a cause of action in and of itself," and instead is part of a breach of contract claim. EPAC Techs., Inc. v. Thomas Nelson, Inc., No. 3-12-0463, 2015 U.S. Dist. LEXIS 151659, at *9–10 (M.D. Tenn. Nov. 9, 2015) (citing First Tenn. Bank Nat'l Ass'n v. Republic Mortgage Ins. Co., 276 F.R.D. 215, 220 (W.D. Tenn. 2011)). Thus, the "obligation of good faith and fair dealing does not create additional contractual rights or obligations, and it cannot be used to avoid or alter the terms of an agreement." Johnson v. Synovus Bank, No. 2:14-cv 02950-STA-dkv, 2016 U.S. Dist. LEXIS 62688, at *9–10 (W.D. Tenn. May 12, 2016) (citation and quotation marks omitted).

The key language at issue in the lease regarding whether Defendants were required to provide Plaintiffs with written notice and an opportunity to cure the alleged breach is as follows:

Landlord shall in no event be charged with default in the performance of its obligations under this Lease unless and until Landlord shall have received written notice from Tenant specifying wherein Landlord has failed to perform any obligation hereunder and Landlord shall have failed to perform such obligation, or remedy such default, within thirty (30) days (or such additional time as is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-953 JVS(ADSx)                    Date    June 30, 2021

Title    STORE SPE LA Fitness et al. V. Fitness International, LLC et al.

reasonably required to correct any such default) after Landlord's receipt of such written notice from Tenant. SUF ¶ 11.

Plaintiffs argue that the "within thirty (30) days" language required Defendants to provide Plaintiffs with written notice and an opportunity to cure the potential sublease issue. Mot., Dkt. No. 63, at 12. Defendants, by contrast, ask the Court to find a distinction between the language in the present case and that at issue in Bristol Preservation, 2017 WL 2773663, a case upon which Plaintiffs rely. Opp'n., Dkt. No. 68, at 20. The language in Bristol Preservation was: "If Landlord shall fail to fully and completely perform its duties and obligations under this Lease and such failure is not cured within thirty (30) days after receive of notice from Tenant advising Landlord of such default ..." 2017 WL 2773663, at *1 . The Bristol Preservation court strictly construed the provision, recognizing that tenant IGC failed to provide 30 days to cure because IGC "abandoned the Country Club . . . sixteen days after" sending the e-mail. Id.

The Court finds that there is no meaningful distinction between the language in the lease at issue here and the language in the Bristol Preservation lease.   Both leases explicitly require a thirty-day period after written notice is issued advising the breaching party of default. The Court will not require that the lease explicitly use the word "cure" in order to give meaning to what the parties clearly bargained for and agreed to: a thirty-day period after written notice in which Plaintiffs would be able to cure any defect before being charged with default.

Defendants argue that whether STORE unreasonably withheld, conditioned and delayed their consent to the potential sublease and therefore breached the Edge O Lake Lease are disputed issues of material fact that preclude summary judgment (and that similarly, whether Plaintiffs breached the covenant of good faith and fair dealing is disputed.) Opp'n., Dkt. No. 68, at 21. However, it is undisputed that Plaintiffs did not provide written notice of default relating to approval of the potential sublease until nearly three months after it was terminated, and even then the written notice did not ask Plaintiffs to cure any purported default because the potential sublease was already terminated. SUF ¶ 26. Given that the Court has strictly construed the language in the lease as requiring written notice and 30 days to cure, the Court finds it appropriate to grant summary judgment on the breach of contract counterclaim and on the related breach of the covenant of good faith and fair dealing counterclaim. Accordingly, the Court finds

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-953 JVS(ADSx) | Date | June 30, 2021 |
|---|---|---|---|

| Title | STORE SPE LA Fitness et al. V. Fitness International, LLC et al. |
|---|---|

that summary judgment is appropriate and GRANTS summary judgment on both counterclaims.

## B. Breach of Contract regarding the Preston Highway Property Lease

Plaintiffs next seek summary judgment on their breach of contract claim against Defendants for damage to the Preston Highway Property because, Plaintiffs argue, "it is undisputed that [Fitness & Sports] failed to maintain the Preston Highway Property in good condition." Mot., Dkt. No. 63, at 13. Plaintiffs submit evidence that Fitness & Sports agreed that it "shall maintain the Leased Premises in good condition, reasonable wear and tear excepted and shall also maintain all heating, ventilating and air conditioning systems located at the Leased Premises." SUF ¶ 29. Plaintiffs submit that the Preston Highway Property's 15 HVAC rooftop units were "destroyed" by "vandalism" in July 2017. Id. ¶ 30. Plaintiffs further provide evidence that Fitness International stated under oath that the property was damaged by "Theft/Vandalism" in submitting an insurance claim, and that Fitness & Sports pocketed the insurance proceeds. Id. ¶¶ 31, 32. As such, Plaintiffs argue, because Kentucky law recognizes that destruction and vandalism is not "ordinary wear and tear," Fitness & Sports had an obligation to repair the Preston Highway Property. Mot., Dkt. No. 63, at 13.

Defendants argue, in contrast, that "factual disputes concerning the Preston Highway Premises preclude summary judgment." Opp'n., Dkt. No. 68, at 22. In support of this proposition, Defendants state that the first amended complaint ("FAC") "contains multiple allegations concerning the parties' discussions and disputes prior to the December 20, 2019, surrender [of the Preston Highway Property] as to the need for repairs and who was responsible for the repairs." Id. (citing FAC ¶¶ 38-62, 71). Defendants also submit evidence that STORE sent emails to Fitness International indicating a disagreement about which party was going to have to pay for repairs due to the HVAC and roof damage. Id. For example, Defendants submit as evidence an email dated February 5, 2020 (more than a month after Fitness & Sports surrendered the property) in which STORE wrote to its own property manager: "Wanted to follow up on the roof condition. STORE is aware of the condition of the roof, it is in need of complete replacement. We would not proceed in this regard unless the building was re-tenanted. I believe the directive as of now is to get the building sold is an as-is where-is condition." DBE Decl. ¶10, Ex. L. Defendants also state that summary judgment is inappropriate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-953 JVS(ADSx)                    Date    June 30, 2021

Title    STORE SPE LA Fitness et al. V. Fitness International, LLC et al.

because Plaintiffs' motion ignores Defendants' affirmative defenses. Opp'n., Dkt. No. 68, at 24.

Plaintiffs are correct that Kentucky courts are clear that damage caused by vandalism is not considered "ordinary wear and tear." See Williams v. Farmers Ins. Exch., No. 2004-CA-002554-MR, 2006 Ky. App. LEXIS 828, at *3–4 (Ky. Ct. App. Feb. 17, 2006). By contrast to damage caused by vandalism, "'wear and tear' commonly means that ordinary and natural deterioration or abrasion which an object experiences by its expected contacts between its component parts and outside objects during the period of its natural life expectancy." AdvancMed, LLC v. Pitney Bowes, Inc., No. 05-464-JBC, 2007 U.S. Dist. LEXIS 64837 (E.D. Ky. Aug. 31, 2007). The question on this issue is whether Defendants breached the provision of the contract that required the property be maintained in "good condition, reasonable wear and tear excepted." See SUF ¶ 29.

The Court finds that summary judgment is appropriate on the narrow issue of liability (though not on the issue of amount) regarding the breach of contract as it relates to the maintenance of the Preston Highway Property. As Plaintiffs correctly point out, "much of Defendants' Opposition focuses on *other* repairs, such as roof repairs and other 'deferred maintenance.'. . [but] whether *other* damage to the Preston Highway Property can be considered ordinary wear and tear is an issue STORE Master is reserving for a fact-finder." Reply, Dkt. No. 70, at 8 (citing Mot., Dkt. No. 63, at 23) (emphasis in original). Plaintiffs at this time only seek, and the Court at this time is only granting, summary judgment as to the narrow issue of whether Fitness & Sports (and Fitness International by virtue of its guaranty) breached Preston Highway Lease § 3 by failing to repair or compensate Plaintiffs for the 15 HVAC units that were vandalized during Fitness & Sports's tenancy. See id., at 7. It is undisputed that (1) Fitness & Sports (and by virtue of its guaranty agreement, Fitness International) was required to maintain the Preston Highway Property "in good condition, reasonable wear and tear excepted and shall also maintain all heating, ventilating and air conditioning systems located at the Leased Premises," (SUF ¶ 29); (2) 15 HVAC units at the Preston Highway Property were "destroyed" during Fitness & Sports's tenancy by "vandalism," (SUF ¶ 30);  (3) Fitness International received a payment from an insurance claim for the 15 HVAC units (SUF ¶ 32); and (4) Neither Fitness & Sports nor Fitness International has compensated STORE

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-953 JVS(ADSx) | Date | June 30, 2021 |
|---|---|---|---|

| Title | STORE SPE LA Fitness et al. V. Fitness International, LLC et al. |
|---|---|

for the damage or replaced the HVAC units[4] (SUF ¶ 36). The Court finds that these facts make it such that Plaintiffs are entitled to judgment as a matter of law on this issue.

What is more, the Court finds that Defendants' argument that there exists a genuine dispute of material fact on this point to be unavailing. The evidence provided in the form of emails regarding when Plaintiffs intended to replace the HVAC units or whether Plaintiffs planned to sell the property as-is does not affect the only relevant inquiry: whether Defendants breached their contractual obligations. See Opp'n., Dkt. No. 68, at 29. With respect to the issue of the affirmative defenses, the Court finds that it is not the case under the Celotex standard that the evidentiary burden is on the plaintiff to disprove an affirmative defense. See SEC v. Schooler, 106 F. Supp. 3d 1157, 1161 n.1 (S.D. Cal. 2015) ("[W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."). Merely stating the existence of an affirmative defense without providing evidence to support the legal theory behind it does not create a genuine dispute of material fact.

Accordingly, the Court GRANTS the motion for summary judgment as to Count I and finds that Fitness & Sports breached the lease agreement for failure to maintain the Preston Highway Property in good condition as a matter of law.

### C. Fitness International's Breach of the Preston Highway Guaranty

Plaintiffs next seek summary judgment on the related issue of whether Fitness International breached the Preston Highway lease as a matter of law. Mot., Dkt. No. 63, at 14. Specifically, Plaintiffs argue that "[Fitness International] as guarantor agreed to be liable to the same extent that [Fitness & Sports] is liable under the Preston Highway Lease." Id. (citing SUF ¶ 7).

The Court agrees. Under Kentucky law, "[a]n absolute guaranty is an unconditional promise of payment or performance on default of the principal." Banterra

---

[4] The Court notes that Defendants' statement that some repairs have been made to the Preston Highway Premises is not specific about the HVAC units and is also not supported by evidence. See SGD, Dkt. No. 68-3 ¶ 36.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 20-953 JVS(ADSx) | Date | June 30, 2021 |

| | |
|---|---|
| Title | STORE SPE LA Fitness et al. V. Fitness International, LLC et al. |

Bank v. Hendrick, No. 5:09-CV-00012-TBR, 2011 U.S. Dist. LEXIS 21708, at *7 (W.D. Ky. Mar. 3, 2011) (quoting McGowan v. Wells' Tr., 213 S.W. 573, 577 (Ky. 1919)). Having granted summary judgment on the issue of Fitness & Sports's liability for breach of contract for failure to maintain the Preston Highway Property in good condition, the Court similarly GRANTS summary judgment as to Fitness International's liability for breach of the Preston Highway Guaranty (Count II).

### D. Breach of Contract regarding the Edge O Lake Lease, Blake James Lease, and Wellington Lease

Plaintiffs next seek summary judgment regarding the alleged breach of the Edge O Lake Lease, the Blake James Lease, and the Wellington Lease due to Fitness & Sports's failure to make payments owed under the respective leases. Mot., Dkt. No. 63, at 15. Plaintiffs argue that unless excused, Fitness & Sports is obligated to pay for rent and other expenses owed under the Leases in an amount totaling $1,271,411.59. Id.

#### i. The Force Majeure Provisions

Defendants argue that the request for summary judgment on the breach of contract claims is defeated by the presence of express force majeure provisions in each lease that excused Fitness & Sports's obligation to pay rent during the periods of government-mandated closure of its facilities. Opp'n., Dkt. No. 68, at 9.

A party seeking to invoke a force majeure provision must show "(1) that an event occurred meeting the contract's definition of 'force majeure,' and (2) that event caused the party's failure to perform." Emerald Int'l Corp. v. WWMV, LLC, No. 15-cv-0179, 2016 U.S. Dist. LEXIS 107340, at *8 (E.D. Ky. Aug. 15, 2016). In both Kentucky and Tennessee, a force majeure provision can only be invoked if the event triggering the provision causes the failure to perform under the contract. See id.; see also Bayader Fooder Trading, LLC v. Wright, No. 13-2856, 2014 U.S. Dist. LEXIS 149191, at *9 (W.D. Tenn. Oct. 21, 2014) ("In Tennessee, an unforeseen event that causes impossibility of performance of a contract may be used as a defense.").

The Wellington Lease has two force majeure provisions, which Defendants argue should be read together to excuse Sports & Fitness's rent obligations during the closure

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-953 JVS(ADSx)                    Date   June 30, 2021

Title     STORE SPE LA Fitness et al. V. Fitness International, LLC et al.

periods. Opp'n., Dkt. No. 68, at 10. Section 20.5 of the Wellington Lease, titled, "Force Majeure" provides:

> Neither Landlord nor Tenant shall be liable to the other for any breach or violation of this Lease resulting from any occurrence or event, including any Act of God, strikes, lockouts, property damage or other casualty or occurrence beyond the reasonable control of any party hereto. Ex. 7 to Hale Decl., §20.5[5].

Section 19, "FORCE MAJEURE" provides:

> In the event either party hereto shall be delayed or hindered in or prevented from the performance required hereunder by reason of strikes, lockouts, labor trouble, failure of power, riots, insurrection, war, acts of God, or other reason of like nature not the fault of the party delayed in performing work or doing acts ("Permitted Delay" or "Permitted Delays"), such party shall be excused for the period of time equivalent to the delay caused by such Permitted Delay. . . provided that the maximum period of time which Landlord may delay any act or performance of work due to a Permitted Delay shall be sixty (60) days. SUF ¶ 48.

The Edge O Lake Lease and the Blake James lease have identical force majeure clauses, which read:

> If either party is delayed or prevented from any of its obligations under this Lease by reason of strike, labor troubles or any other cause whatsoever beyond such party's control, then the period of such delay or such prevention shall be deemed added to the time provided herein for the performance of any such obligation. SUF ¶ 47.

Defendants argue that the government closure orders were "beyond the reasonable control" of Sports & Fitness because they made "it illegal for Tenant to use the premises during such period of time, and therefore, excusing its obligations." Opp'n., Dkt. No. 68, at 10. Accordingly, Defendants posit, these provisions defeat the Motion as a matter of

---

[5] Contrary to Defendants' assertions in their request for hearing with respect to the Court's tentative order on this motion, the Court has quite clearly considered the force majeure provision in §20.5 of the Wellington Lease. See Request for Hearing, Dkt. No. 75, at 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-953 JVS(ADSx) | Date | June 30, 2021 |
| --- | --- | --- | --- |

| Title | STORE SPE LA Fitness et al. V. Fitness International, LLC et al. |
| --- | --- |

law. Id. However, as Plaintiffs point out, Defendants do not show that they were prevented from making payments under the Leases "by reason of" the COVID-19 pandemic or government orders or that the orders were the cause of the failure to pay. In fact, Plaintiffs submit evidence that Defendants have asserted that they do have to ability to pay, which is why they cannot raise a lack of funds defense. See SUF ¶ 6.

What is more, Plaintiffs point out that each of the Leases recognizes that the force majeure provisions act only to delay performance under the Leases, not to forever abate rent altogether. Mot., Dkt. No. 63, at 17. Nevertheless, Plaintiffs argue, while F&S has resumed payment of some amounts owed under the Leases (evidencing an ability to pay), Plaintiffs continue to refuse to pay rent and related expenses from over one year ago. Id. (citing SUF ¶¶ 55–57).

The Court agrees with Plaintiffs that, properly read, the force majeure provisions do not support Defendants' theory that they can forever abate rent and other amounts owed under the Leases. First, as a matter of law, Defendants have not shown that they were prevented from paying rent by the government closures or that the closures caused them to stop paying rent. Instead, Defendants only submit evidence that the fitness studios could not operate as fitness studios during that time. However, that does not amount to the pandemic causing an inability to pay rent. Second, and more importantly, the force majeure provisions do not permit complete abatement of rent and other amounts owed under the Leases. As such, even if the provisions applied, they would not support a theory that the rent obligations for the period of the closures could simply be extinguished. Accordingly, the Court finds that the force majeure provisions do not protect Defendants from Plaintiffs' breach of contract claim.

### ii. Impossibility/ Impracticability

Defendants alternatively urge the Court to find that payment of rent was excused under the doctrines of temporary impossibility and impracticability. Opp'n., Dkt. No. 68, at 15. The doctrine of impossibility of performance provides that if a party's performance is rendered "impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged." Restatement (2nd) of Contracts §261. A party's "ability to render a performance is discharged when, through no fault of his own, such performance is made impracticable after the contract was entered….Further, such

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-953 JVS(ADSx)                    Date   June 30, 2021

Title   STORE SPE LA Fitness et al. V. Fitness International, LLC et al.

performance may be rendered impracticable by having to comply with government regulations." See Brand v. Howell, 2004 WL 1229265, at *6 (Ky. Ct. App. June 4, 2004) (citing Restatement (Second) of Contracts (1981) §§261, 264)). Defendants argue that for the closure periods, they lost all revenue from dues-paying members, rendering it impossible or impracticable to pay rent. Opp'n., Dkt. No. 68 at 16-17.

The Court disagrees with Defendants. As with force majeure provisions, impossibility and impracticability both require that the precipitating event *cause* the impossibility or impracticability. "[F]ailure to perform a contract is excused if performance becomes impossible due to a cause not attributable to the non-performing party and the impossibility is not among the probable contingencies which a [person] of ordinary prudence should have foreseen and provided for." Groner v. On-Site Grading, Inc., No. E1999-00219-COA-R3-CV, 2000 Tenn. App. LEXIS 270 (Tenn. Ct. App. Apr. 28, 2000) (citation and quotation marks omitted). As the Court noted above, Defendants acknowledge that they are able to pay and do not show that either the  COVID-19 pandemic or closure orders prevented them from making payments. Showing a mere decrease in revenue from dues paying members does not amount to impossibility or impracticability. Thus, the impossibility and impracticability doctrines are inapplicable to Defendants' failure to pay amounts owed under the Leases.

### iii. Frustration of Purpose

Defendants alternatively argue that the frustration of purpose doctrine excuses the obligation to pay rent during the closure periods. Opp'n., Dkt. No. 68, at 13.  Under both Kentucky and Tennessee law, the frustration of purpose doctrine applies in cases where "the total or nearly total destruction of the purpose for which, in the contemplation of both parties, the transaction was entered into." Frazier v. Collins, 300 Ky. 18, 21 (Ky. Ct. App. 1945); see also Haun v. King, 690 S.W.2d 869, 871 (Tenn. Ct. App. 1984) ("The doctrine of frustration of commercial purpose . . . is if the happening of an event, not foreseen by the parties to the contract and neither caused by nor under the control of either party, has destroyed or nearly destroyed either the value of performance or the object or purpose of the contract then the parties are excused from further performance.").

Defendants argue that "[t]he sole and express purpose of the Leases was for Tenant to operate a health club and fitness center from the Premises. As it was illegal for Tenant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     SACV 20-953 JVS(ADSx)                  Date     June 30, 2021

Title        STORE SPE LA Fitness et al. V. Fitness International, LLC et al.

to use the entire Premises during the Closure Periods, the essential purpose of the Lease, and in turn, the totality of the bargain that Tenant was to receive, was completely frustrated. Because Tenant did not receive anything in return, its obligations are excused." Opp'n., Dkt. No. 68, at 14.

Plaintiffs, by contrast, argue that the purpose of the leases has not been frustrated because each lease covers a term of at least twenty years, so a temporary closure of a few months did not frustrate the entirety of the leases' purpose. Mot., Dkt. No. 63, at 20 (citing SUF ¶¶ 2-4). Plaintiffs also draw the Court's attention to the rarity of the application of the frustration of purpose doctrine under Tennessee and Kentucky law. See Reply, Dkt. No. 70, at 13.

The Court finds that the temporary government closure of fitness centers when the properties were leased for at least twenty years each does not amount to the kind of complete frustration of purpose required for the doctrine to apply. See e.g., Greater New York Auto. Dealers Assn, Inc. v. City Spec, LLC, 136 N.Y.S.3d 695 (N.Y. Civ. Ct. 2020) ("The Court notes that, even if Respondent were forced by the Executive Order to close in-person operations at the Premises, a four-month closure out of a five-year lease did not frustrate the overall purpose of the Lease"); Cf. BKNY1, Inc. v. 132 Capulet Holdings, LLC, 2020 WL 5745631, 2020 NY Slip Op. (Sup. Ct., Kings County 2020) (holding that a nine-year restaurant lease was not frustrated by a two-month state-mandated COVID-19 closure). The Court declines to extend the bounds of Kentucky and Tennessee law to find the existence of a so-called "temporary frustration of purpose" doctrine where none has existed before. Accordingly, the Court does not find persuasive Defendants' citation to Michigan and Massachusetts cases where a temporary frustration of purpose doctrine seems to have been applied. See Opp'n., Dkt. No. 68, at 13-15. What is more, Plaintiffs point out that both the Blake James and Edge O Lake Properties could be used for purposes other than health clubs with STORE's consent. See Reply, Dkt. No. 70, at 15 (citing Dkt. No. 63-6 at 5 § 1.1(d); 63-7 at 5 § 1.1(d)). Accordingly, the Court does not find that the frustration of purpose doctrine excused Defendants' rent obligations.

### iv. Failure of Consideration

Defendants also assert that rent payment is excused due to a failure of consideration, which they argue is fact-intensive and therefore serves as a basis for denying the Motion. Opp'n., Dkt. No. 68, at 23. Specifically, Defendants argue that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-953 JVS(ADSx)          Date   June 30, 2021

Title   STORE SPE LA Fitness et al. V. Fitness International, LLC et al.

during the closure period it was illegal for them to use the leased premises for their intended purposes, and that "thus Tenant did not receive the benefit of its bargain and there was a complete failure of consideration." Id.

Under both Kentucky and Tennessee law, "[a]ny consideration, however small, will support a promise." Smith v. Riley, No. E2001-00828-COA-R3-CV, 2002 Tenn. App. LEXIS 65, at *9 (Tenn. Ct. App. Jan. 30, 2002); Luigart v. Fed. Parquetry Mfg. Co., 238 S.W. 758, 760–61 (Ky. Ct. App. 1922) ("As a valid consideration may be doing or the promising to do something not illegal, at the request of the promisor, which promise is not already under a legal obligation to do, or the forbearing to do something which he has a legal right to do, it is clear that the consideration need not be a thing of pecuniary value or even reducible to a money value.").

The Court does not agree with Defendants that the temporary closure orders amounted to a failure of consideration. As was the case in CAB Bedford LLC v. Equinox Bedford Ave, Inc., No. 652535/2020, 2020 N.Y. Misc. LEXIS 10861, at *3–6 (N.Y. Sup. Ct. Dec. 22, 2020), "[t]his is not a case where they are forbidden from running a gym ever again at the premises." Defendants were entitled to possess and use the properties guaranteed to them by the leases. The right to use the property is sufficient consideration even if operation as a fitness center was temporary illegal. As Plaintiffs note, "throughout the COVID-19 pandemic and government closure orders, the Edge O Lake Property, Blake James Property, and Wellington Property have been available for [Fitness & Sports]'s exclusive use." Mot., Dkt. No. 63, at 20. Furthermore, although Defendants state that the failure of consideration inquiry is a fact-intensive one, they do not draw the Court's attention to relevant facts that would tend to support this claim. See Dkt. No. 68, at 23. The Court finds that absent evidence of what materially disputed facts make this inapt for summary judgment, it is wholly appropriate to find as a matter of law that the government closure orders did not deprive Defendants of consideration.

   *v. Condemnation*

Defendants next state that determining whether a taking has occurred is a fact-intensive inquiry inappropriate for summary judgment. Opp'n., Dkt. No. 68, at 30. They argue that the closure orders amounted to a temporary taking of the Edge O Lake Lease and James Lease, and that if a portion of property is taken then rent is abated to the extent of the space so taken. Id. (citing Leases at §4.2). However, Defendants do not cite any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-953 JVS(ADSx) | Date | June 30, 2021 |
|---|---|---|---|

| Title | STORE SPE LA Fitness et al. V. Fitness International, LLC et al. |
|---|---|

evidence in support of this affirmative defense indicating that a taking actually occurred. Moreover, condemnation occurs only if the government specifically acts pursuant to its eminent domain powers. TJM 64, Inc. v. Harris, No. 2:20-cv-02498-JPM-tmp, 2020 U.S. Dist. LEXIS 134037, at *20–22 (W.D. Tenn. July 29, 2020) (recognizing a county's public health COVID-19 order was pursuant to its police power—not eminent domain).

The Court finds that there is no evidence that the Tennessee or Kentucky governments "took" anything, and that instead there was simply a regulation temporarily put in place that limited operations. What is more, Defendants acknowledge that they are now "again permitted to operate" their businesses. SUF ¶ 65. Thus, the Court finds that the eminent domain provisions of the Edge O Lake Lease and Blake James Lease do not excuse Defendants' obligations to pay rent.

Because the Court finds that none of Defendants' arguments creates a legally cognizable excuse for their failure to pay rent and other financial obligations as required under the lease terms, summary judgment is appropriate on the breach of contract issue. Because Defendants have not been excused from their payment obligations under the Edge O Lake Lease, Blake James Lease, and Wellington Lease and, the Court GRANTS the motion for summary judgment on the breach of contract issue in the amount of $1,271,411.59 (plus any further unpaid amounts before judgment is entered). See SUF ¶¶ 60–62.

### E. Fitness International's Liability Due to Guaranty Agreement

Finally, Plaintiffs argue that because Fitness International signed Guaranty Agreements for which it agreed to be "jointly and severally bound" with Fitness & Sports for the performance of Fitness & Sports's obligations under the Leases, the Court should grant summary judgment in as to FAC Count VII. Mot., Dkt. No. 63, at 24. The Court agrees. As discussed above, given that Fitness International guaranteed Fitness & Sports's leases, it is jointly and severally liable for the breaches of contract committed by Fitness & Sports. Accordingly, the Court GRANTS summary judgment as to Fitness International's liability as guarantor.

### F. Defendants' Request for Judicial Notice

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-953 JVS(ADSx)                    Date   June 30, 2021

Title   STORE SPE LA Fitness et al. V. Fitness International, LLC et al.

Defendants filed a request for judicial notice ("RJN")  in support of its opposition to Plaintiffs' motion for summary judgment. RJN, Dkt. No. 69. Specifically, Defendants seek judicial notice of the following documents:

1. Kentucky Executive Order 2020-215 (March 6, 2020 Executive Order declaring a State of Emergency in the State of Kentucky to prevent further spread of COVID- 19).

2.Kentucky Executive Order 2020-317 (March 17, 2020 Executive Order 2020-317, directing that all gyms cease all in-person operations to "reduce and slow the spread of COVID-19."

3 The Office of the Governor Update permitting Gyms and fitness centers to reopen in Kentucky on June 1, 2020.

4. The Office of the Governor Update from Kentucky Governor Beshear on December 14, 2020, announcing new public health guidance for gyms and fitness centers, allowing them to operate at 33% capacity.

5. The Office of the Governor Update, effective March 5, 2021, raising the maximum capacity limit for gyms and fitness centers from 50% to 60%.

6. Executive Order No. 14 declaring a state of emergency in Tennessee to facilitate the treatment and containment of COVID-19.

7. Executive Order No. 17 directing that all gyms and fitness/exercise centers or substantially similar facilities in Tennessee close and suspend in-person services (and the Tennessee Government information release to that effect.

8. Executive Order No. 22 extending the closure of gyms and fitness centers and directing all residents of Tennessee, with certain exceptions, to stay at home.

9. Executive Order No. 27 extending the stay at home order and the closure of gyms and fitness facilities in Tennessee through April 30, 2020.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-953 JVS(ADSx)              Date    June 30, 2021

Title    STORE SPE LA Fitness et al. V. Fitness International, LLC et al.

10. Tennessee's Economic Recovery Group' announced guidance for gyms and exercise facilities on how to reopen safely.

11. Executive Order No. 30, permitting gyms and fitness centers to begin reopening on May 1, 2020 in all counties in Tennessee except in certain counties, including Davidson, where gyms were not permitted to reopen until May 25, 2020.

12. Order 6 from the Medical Director of Health for Tennessee.

Under Federal Rule of Evidence 201, the Court may take judicial notice of matters of public record if the facts are not "subject to reasonable dispute." Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001); see Fed. R. Evid. 201(b).   The Court finds that all of Defendants' requested documents are public records not subject to reasonable dispute, and thus are appropriate for judicial notice. Accordingly, the Court **GRANTS** the RJN.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion. The Court also **GRANTS** Defendants' RJN. The Court has considered Defendants' Request for Hearing regarding the Court's tentative order on this motion. Request for Hearing, Dkt. No. 75. The Court has two thoughts related to this Request. First, contrary to Defendants assertion (and as noted in footnote 5 above), the Court has considered the separate force majeure provision in §20.5 of the Wellington Lease in the determination of this motion. See id., at 3. Second, the Court does not find persuasive Defendants' reference to the Restatement of Contracts as authority for their argument that  the Court ought to consider "temporary frustration of purpose"for the months they were unable to use the properties as opposed to considering the entirety of the 20-year lease term. See id., at 4. Accordingly, the Court finds that oral argument will not be helpful in this matter. Fed. R. Civ. P. 78; L-R 7–15. Accordingly, the Court **DENIES** Defendants' request for hearing.

**IT IS SO ORDERED.**