DAWN B. EYERLY (BAR NO. 185074)
dawn.eyerly@ffslaw.com
FREEMAN, FREEMAN & SMILEY, LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone:  (310) 255-6100
Facsimile:   (310) 255-6200

KLEHR HARRISON HARVEY
BRANZBURG LLP
A. Grant Phelan (PA ID 65741)
(**ADMITTED *PRO HAC VICE* **)
Mary Ellen O'Laughlin (PA ID 31381)
(**ADMITTED *PRO HAC VICE* **)
gphelan@klehr.com
molaughlin@klehr.com
1835 Market Street, Suite 1400
Philadelphia, PA 19103
Tele: (215) 569-2700
Fax:  (215) 569-6603

Attorneys for Defendant FITNESS
INTERNATIONAL, LLC and Defendant
and Counter-Claimant FITNESS &
SPORTS CLUBS, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| STORE SPE LA FITNESS 2013-7, LLC and STORE MASTER FUNDING V, LLC,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>FITNESS INTERNATIONAL, LLC and FITNESS & SPORTS CLUBS, LLC,<br><br>　　　　Defendants. | Case No. 8:20-CV-00953-JVS-ADS<br><br>**DEFENDANTS FITNESS & SPORTS CLUBS, LLC AND FITNESS INTERNATIONAL, LLC'S TRIAL BRIEF**<br><br>Judge:  Hon. James V. Selna<br>Date:    December 1, 2021<br>Time:   9:30 a.m.<br>Crtrm.: 10C |
| FITNESS & SPORTS CLUBS, LLC,<br><br>　　　　Counter-Claimant,<br><br>　　vs.<br><br>STORE SPE LA FITNESS 2013-7, LLC,<br><br>　　　　Counter-Defendant. | Action Filed: May 22, 2020 |

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3 I. INTRODUCTION ........................................................................................ 5

4 II. ARGUMENT - PLAINTIFF'S EVIDENCE IS INSUFFICIENT TO PRESENT THE CASE TO A JURY ............................................................ 5

5

6 A. Plaintiff Seeks To Introduce Evidence Of "Replacement" Value To Prove Damages At Trial, Which Is Not The Proper Measure Of Damages, And Further Risks Substantially Prejudicing The Jury Without Adding Any Redeeming Probative Value ........................ 5

7

8 B. Landlord's Admissions Show That It Cannot Establish The Damages It Needs To Establish Under Kentucky Law ........................ 8

9

10 III. THE COURT SHOULD EXCLUDE UNRELIABLE EVIDENCE THAT IS NOT PROBATIVE OF THE PROPER MEASURE OF DAMAGES UNDER KENTUCKY LAW ...................................................... 12

11

12 A. Plaintiff Will Be Unable To Demonstrate Damages At Trial, As It Has No Evidence Of The Proper Measure Of Damages Under Kentucky Law ........................................................................ 12

13

14 1. Plaintiff has no evidence of the proper measure of damages regarding the RTUs and all evidence of "replacement" value should be excluded.................................... 14

15

16 2. Plaintiff has no evidence to introduce bearing on the proper measure of damages to the roof, and the Court should exclude evidence of replacement value of the roof. ....... 16

17

18 B. Additional Evidentiary Issues Concerning Plaintiff's Proposed Exhibits ........................................................................ 18

19 1. Evidence of insurance should be excluded................................ 18

20 2. The preferred photograph exhibits must be excluded. .............. 21

21 3. The replacement value estimates in Plaintiff's expert report offered as exhibits by Plaintiff are inadmissible hearsay, unreliable, irrelevant and have no probative value, but only will mislead and confuse the jury and must be excluded. ....................................................................... 24

22

23

24 4. The third party reports lack foundation, constitute inadmissible hearsay, are unreliable, irrelevant and have no probative value, all of which requires exclusion. .................. 24

25

26 IV. CONCLUSION .......................................................................................... 30

27

28

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AdvanceMed, LLC v. Pitney Bowes, Inc.,*
  2017 WL 2571673 (E.D. Ky. Aug. 31, 2007) ..................................................7, 8, 9

*Am. Towers LLC v. BPI, Inc.,*
  130 F.Supp.3d 1024 (E.D. Ky 2015) .............................................................10, 16

*Ambrosini v. Labamaque,*
  966 F.2d 1464 (D.C. Cir. 1992) ...........................................................................29

*Barnett v. Mercy Health Partners-Lourdes, Inc.,*
  233 S.W.3d 723 (Ky. App. 2007) ........................................................................12

*Bergen v. F/V St. Patrick,*
  816 F.2d 1345 (9th Cir. 1987), opinion modified on reh'g, 866 F.2d
  318 (9th Cir. 1989) ..............................................................................................30

*City of Phoenix v. Com/Systems, Inc.,*
  706 F.2d 1033 (9th Cir.1983) ..............................................................................30

*Cyclone USA, Inc. v. LL&C Dealer Services, LLC,*
  2007 WL 662337 ..................................................................................................30

*Eubank v. Wheat, Baker & Co.,*
  1867 WL 6937 (Ky. App. April 24, 1867) ...........................................................16

*Facebook, Inc. v. Power Ventures, Inc.,*
  252 F.Supp.3d 765 (N.D. Cal. 2017), *aff'd*, 749 F.App'x 557 (9th
  Cir. 2019) .............................................................................................................29

*Ford Contracting, Inc. v. Kentucky Transp. Cabinet,*
  429 S.W.3d 397 (Ky. App. 2014) .........................................................................17

*Garcia v. Praxair, Inc.,*
  2021 WL 38183 (E.D. Cal. Jan. 5, 2021) ...........................................15, 18, 19, 24

*Gray v. United States,*
  2007 WL 4644736 (S.D. Cal. Mar. 12, 2007) ......................................................29

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

*Mahone v. Leham*,
  347 F.3d 1170 (9th Cir. 2003) ............................................................... 20

*McCarty v. Hall*,
  697 S.W.2d 955 (Ky. App. 1985)....................................................... 8, 14

*Mountain Water Dist. v. Smith*,
  314 S.W.3d 312 (Ky. App. Kt. 2010)................................................. 6, 10

*Odyssey Wireless, Inc. v. Apple Inc.*,
  2016 WL 7644790 (S.D. Cal. Sept. 14, 2016) ...................................... 29

*Paddack v. Dave Christensen, Inc.*,
  745 F.2d 1254 (9th Cir. 1984) .............................................................. 28

*R & B Aircraft, Inc. v. ABG Ambulance Services*,
  949 F.3d 397 (6th Cir. 1991) ............................................... 8, 9, 14, 15

*Rogers v. Raymark Industries, Inc.*,
  922 F.2d 1426 (9th Cir. 1991) .............................................................. 29

*S. Ry. In Ky. V. Ky. Grocery Co.*,
  178 S.W. 1162 (1915) ........................................................................... 14

*Spencer v. Woods*,
  282 S.W.2d 851 (Ky. 1955).................................................................. 17

*Technology Licensing Corp. v. Gennum Corp.*,
  2004 WL 1274397 (N.D. Cal. Mar. 26, 2004) ........................ 15, 18, 24

*U.S. Bond & Mortg. Corp. v. Berry*,
  61 S.W.2d 293 (Ky. 1933) .................................................................... 12

*U.S. v. Lizarraga-Tirado*,
  789 F.3d 1107 (9th Cir. 2015) ............................................................. 22

*U.S. v. Paciano Lizarrago-Tirado*,
  D.C. No. 13-10530 (9th Cir. June 18, 2015)....................................... 11

*U.S. v. W.R. Grace*,
  504 F.3d 745 (9th Cir. 2007) ............................................................... 28

*United States v. Cazares*,
  788 F.3d 956 (9th Cir. 2015) ............................................................... 29

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

5187735.1 27901-800

3

*United States v. Unrub*,
    855 F.2d 1363 (9th Cir. 1987) ............................................................... 29

*Wells v. Stagg*,
    2016 WL 4410712 (Ky. App. March 16, 2016) ............................................ 14, 17

*Worldwide Equipment Enterprises, Inc. v. Broan-Nuton LLC*,
    191 F.Supp.3d 684 (E.D. Ky. 2016) .................................................. 6, 14

**Other Authorities**

Fed. R. Evid. 403 .................................................................................. 15, 21

Fed. R. Evid. 702 and 703 .................................................................. 25, 27, 28

Fed. R. Evid. 703 .................................................................................. 28, 29

Fed. R. Evid. 801(a) .............................................................................. 11

Fed.R.Evid. 801(c) ................................................................................ 20

Fed. R. Evid. 803(6) .............................................................................. 30

FRE 411 ................................................................................................... 19

FRE 1002 ................................................................................................. 19

L.R. 16-10(b) and (c) ............................................................................ 5

Rule 703 .................................................................................................. 29

Rule 902(11) ........................................................................................... 30

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

Defendants FITNESS & SPORTS CLUBS, LLC ("Tenant") and Defendant FITNESS INTERNATIONAL, LLC ("Guarantor" and with Tenant, collectively "Fitness") hereby submit this Trial Brief.

## I.   INTRODUCTION

Pursuant to C.D. Cal. L.R. 16-10(b) and (c), Defendants submit this Trial Brief to address the issues as directed by the Court during the Pretrial Conference regarding anticipated evidentiary problems during trial, and in reply to Plaintiff's Memorandum of Contentions of Fact and Law (Dkt. No. 88). Defendants attempted to resolve the evidentiary deficiencies concerning Plaintiff STORE Master Funding V, LLC's ("Landlord") trial exhibits and anticipated witness testimony but were unable to do so. Accordingly, Defendants set forth the following arguments and authorities that respond to specific issues raised by Plaintiff in its Memorandum of Contentions of Law and Fact ("Pl.'s Memo.") and anticipated to be raised at trial or in Plaintiff's subsequent filings in support of its proposed jury instructions.

## II.   ARGUMENT - PLAINTIFF'S EVIDENCE IS INSUFFICIENT TO PRESENT THE CASE TO A JURY

**A.   Plaintiff Seeks To Introduce Evidence Of "Replacement" Value To Prove Damages At Trial, Which Is Not The Proper Measure Of Damages, And Further Risks Substantially Prejudicing The Jury Without Adding Any Redeeming Probative Value**

Plaintiff improperly seeks to introduce evidence at trial that is not probative of the proper measure of damages under Kentucky law, which will substantially mislead and confuse the jury to Plaintiff's benefit. Plaintiff continues to conflate Tenant's asserted obligation to restore the roof to the condition it was in immediately before the alleged breach with an obligation to <u>replace</u> the roof that Landlord admits had exceeded its useful life when the property was turned over at the end of the Lease. Further, Plaintiff's theory of damages with respect to the 15 packaged rooftop units housing the property's heating and air conditioning systems

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

(the "RTUs") suffers from the same flaw: it seeks to introduce evidence of <u>replacement</u> value, rather than their pre-breach, fair market value, as a measure of damages. (*See, e.g.*, Pl.'s Memo., p. 6). Plaintiff's "replacement" theory of damages has no basis under Kentucky law. *See Worldwide Equipment Enterprises, Inc. v. Broan-Nuton LLC*, 191 F.Supp.3d 684, 691 (E.D. Ky. 2016) (personal property) (applying Kentucky law); *Mountain Water Dist. v. Smith*, 314 S.W.3d 312 (Ky. App. Kt. 2010) (party may introduce evidence of cost to repair real property, but may not collect damages "that exceed the diminution in fair market value" of such property). On the one hand, Plaintiff asserts that the alleged damages at issue for trial relate to Tenant's repair obligations,[1] but then Plaintiff seeks damages for, and will only attempt to present evidence concerning, the replacement value of the roof and the RTUs, as if each had been purchased, brand new, just before they were damaged.[2] (*See* Pl.'s Memo., pp. 3, 6, 7-8). In short, Plaintiff's evidence of damages has no legal basis, is not probative of the correct measure of damages, and further risks misleading and prejudicing the jury by the introduction of improperly inflated valuations.

Further, Plaintiff's argument concerning the roof is belied by the plain language of Section 3 of the Lease which states:

> Tenant shall maintain all necessary repairs to the Leased Premises and shall maintain the Leased Premises in good condition, **reasonable wear and tear excepted**, and shall also maintain all heating, ventilating and air conditioning systems located at the Leased Premises.

---

[1] Plaintiff states: "In brief, the remaining issues for trial are: (1) the damages caused by Defendants' failure to repair or compensate STORE Master for the HVAC units; and (2) whether Defendants' failure to repair or compensate STORE Master for the Preston Highway Premises roof and sump pump constitute a breach of Preston Highway Lease and, if so, the amount of damages." (Pl.'s Memo., p. 1).

[2] Plaintiff also seeks damages for the condition of the broken sump pump at the property. (Pl.'s Memo., pp. 2-3, 7). As set forth in Defendants' Memorandum of Contentions of Law and Fact, Tenant acknowledges that it is responsible for the broken sump pump and sump pump pit and will pay Landlord the amount of $4,825.00 for the sump pump and sump pump pit.

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

(Lease, §3). (Emphasis added). Section 3 of the Lease is clear by its terms: on the one hand, Tenant had an obligation to maintain the Premises in "good condition;" but on the other hand, the parties carved out "reasonable wear and tear" from Section 3, such that the Tenant had no obligation to prevent, maintain, or repair "ordinary and natural deterioration." *See AdvanceMed, LLC v. Pitney Bowes, Inc.*, 2017 WL 2571673, at * (E.D. Ky. Aug. 31, 2007) (applying Kentucky law). Put differently, once natural deterioration, *i.e.*, wear and tear, brought the roof beyond "good condition," the Tenant's restorative obligations ceased. Thus, under Section 3 of the Lease Plaintiff must introduce evidence that (i) the Tenant's failure to maintain the roof in good condition <u>preceded</u> the point at which ordinary wear and tear took the roof beyond its useful life, and (ii) must introduce evidence allowing the jury to <u>measure</u> those damages, *i.e.*, evidence that the diminution in value of the Premises or roof can be attributed to Tenant's failure to maintain it, rather than to normal wear and tear. But Plaintiff has no evidence of either.

In its pretrial submission, Plaintiff omits from its arguments concerning Section 3 the phrase "reasonable wear and tear excepted" to argue, without basis in law or fact, that "good condition" means that Tenant is obligated to replace the roof because it was not in "good condition."[3] The purposeful omission is telling. Plaintiff knows that it has no evidence to present to the jury concerning the condition of the roof at the time of the turnover of the property – the relevant time period - and it knows that it has no evidence of damages recoverable under Kentucky law for diminution in value – the relevant measure of damages. Plaintiff has no evidence of the year the roof was installed, the condition of the roof just before the alleged

---

[3] Plaintiff argues: "Here, the Preston Highway Lease's language is clear: ***F&S*** has the obligation to make all necessary repairs to the Preston Highway Premises and must maintain the Premises in "good condition." On the other hand, STORE had "no obligation or liability with respect to repairs or maintenance of the Leased Premises." Based on F&S' admissions and contemporary evidence, the sump pump and roof were not in "good condition" during F&S' tenancy and, thus, F&S was responsible for replacing the same." (Pl.'s Memo., p. 6) (emphasis supplied).

breach, the condition of the roof just after the alleged breach, or the condition of the roof upon surrender. In other words, there is no evidence from which the jury can properly measure Plaintiff's damages in the way Kentucky law requires – evidence of diminution in value of the Premises pre and post breach.

Tenant has no obligation - either under the Lease or under Kentucky law - to reward Landlord with a new roof. But that is the entirety of Landlord's evidence. Without introducing evidence from which the jury can determine how much Tenant's breach diminished the value of the property or the roof, introducing evidence of the value of a new roof lacks all probative value, and further will substantially prejudice the jury by implying that Landlord is entitled to a new roof. Such evidence, therefore, should be excluded.

**B.      Landlord's Admissions Show That It Cannot Establish The Damages It Needs To Establish Under Kentucky Law**

Landlord has admitted that it has no evidence of the age of the 15 RTUs on the roof of the property that were vandalized in late July 2017. Landlord further has admitted that it has no evidence of the condition of the RTUs immediately before they were vandalized, including whether they were operational at the time. Nor does Landlord have evidence of the fair market value of the RTUs either immediately before or immediately after the vandalism. Thus, Landlord has no evidence of the proper measure of damages for the RTUs under Kentucky law: "the difference in the fair market value of the property before and after the accident." *McCarty v. Hall*, 697 S.W.2d 955, 956 (Ky. App. 1985); ); *see also R & B Aircraft, Inc. v. ABG Ambulance Services*, 949 F.3d 397 (6th Cir. 1991).

*R&B Aircraft* is particular instructive—and indeed dispositive—here. *R & B Aircraft* arose out of a fire in an airport hangar that destroyed the plaintiff's aircraft. 949 F.3d at *1. At trial, the plaintiff's fact witness testified that the plaintiff purchased the aircraft for $130,000 a few years earlier, and that the plaintiff spent an additional $30,000 on improvements to the aircraft after purchasing it. *Id.* at *2.

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

Notably:

> [The plaintiff] did not testify as to the fair market value of the airplane **at the time of the fire**. Rather, the foregoing was the extent of his testimony on the issue of damages.

*Id.* (emphasis added). After the plaintiff closed its case, the defendant-owner of the hangar moved for a directed verdict. *Id.* The trial court granted the motion, finding that the plaintiff did not introduce any evidence bearing on the proper measure of damages under Kentucky law - the fair market value of the aircraft immediately before it was destroyed. *Id.* The Sixth Circuit affirmed, holding:

> The evidence on damages was limited solely to Gary Riley's testimony that the airplane was "rendered essentially valueless…and he did not testify as to the fair market value of the airplane at the time of the fire.

> In Kentucky, the measure of damages for personalty is the difference between the fair market value immediately before and after the accident…Riley's testimony was clearly insufficient to show the value of the airplane immediately before the fire…Furthermore, there was no testimony as to the value of the airplane after the accident.

> \*\*\*

> Because the evidence of damages was tenuous at best, **the jury would have had no guidance to rely upon in arriving at an appropriate award**. "Juries should not be permitted to indulge in speculation and guess work as to the probable damages resulting from an alleged act of negligence where there is no tangible evidence in that respect…Because plaintiff failed to provide any evidence upon which a jury could render a verdict for plaintiff on either the issue of liability or damages, we conclude that the district court did not err in granting defendant's motion for a directed verdict.

*Id.* at \*5 (emphasis added). As in *R & B Aircraft*, here the Landlord's case suffers from the same evidentiary deficiencies, and thus should meet a similar fate. As mentioned above, the Landlord admits that it has no evidence of the age of the 15 RTUs that were vandalized in late July 2017. Landlord further has no evidence of the condition of the RTUs immediately before they were vandalized, including whether they were operational at the time. Landlord has no evidence of the fair market value of the RTUs, either immediately before or immediately after the vandalism. The evidence that the Landlord does have—the "replacement" value of brand new RTUs - is not probative of the proper measure of damages under

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  Kentucky law and poses grave risks of misleading, confusing, and prejudicing the
2  jury, warranting exclusion at trial.

3      Landlord's evidence of damages to the roof suffers from a similar, fatal flaw.
4  Landlord has no evidence concerning any diminution in value of the property as a
5  result of the condition of the roof, as required under Kentucky law. *See Am. Towers*
6  *LLC v. BPI, Inc.*, 130 F.Supp.3d 1024, 1035 (E.D. Ky 2015). In Kentucky, the
7  proper measure of damages to real property is its diminution in value, *i.e.*, the
8  difference between the market value of the property just before and just after it was
9  damaged, or the cost to repair the damage, provided however, that such "repair"
10 value is not greater than the diminished value of the property. *Id.* at 1035; *but see*
11 *Mountain Water Dist.*, 314 S.W.3d at 312 (holding that party may introduce
12 evidence of cost of repair, but may not collect damages for injury to real property
13 "that exceed the diminution in fair market value" of such property).

14     As with its evidence relating to damage to the RTUs, even if Landlord could
15 prove a breach of the Lease at trial regarding the condition of the roof, Landlord's
16 damages with respect to the roof suffers from similar evidentiary deficiencies. Put
17 plainly, Landlord has no evidence bearing on damages, at least as damages are
18 properly measured under Kentucky law. Landlord has no evidence of the value of
19 the property - or the roof - immediately before Tenant surrendered it; it has no
20 evidence of the value of the property - or the roof - immediately after Tenant
21 surrendered it; nor does Landlord have evidence of the cost to bring the roof from its
22 post-breach back to its pre-breach condition. In other words, there is no evidence
23 from which a jury can determine either (i) how much Tenant's failure to maintain
24 the property diminished the property's value; or (ii) the cost to repair the roof from
25 the condition it was in at the end of 2019 to the condition it was in before the failure
26 to maintain the roof occurred.

27     What Landlord does have are expert witnesses who issued an expert report
28 without any evidence or opinion as to the condition of the property or the roof at the

1    time it was surrendered to Landlord. Thus, Landlord has amassed an evidentiary

2    record fit for the wrong legal standard, *i.e.*, recouping the <u>original, liquidated value</u>

3    of damaged property, where Kentucky requires evidence of what the roof and RTUs

4    were worth at the time of the breach. These evidentiary deficiencies are fatal

5    Landlord's claim to damages, as the jury would be forced to engage in rank

6    speculation and unduly prejudice Tenant's case

7        Further, Landlord admits it has no evidence of the age of the roof. Landlord

8    admits that in 2014 it purchased the property, which was built in 1972, without

9    inspecting it and without obtaining any records concerning it, including any repair

10   or maintenance records. Landlord admits that the roof had exceeded its useful life by

11   the time the Lease expired on December 31, 2019. Moreover, Landlord will not

12   introduce any evidence as to whether—or to what extent—Tenant could have

13   prevented, mitigated, or reversed the natural deterioration of the roof that Landlord

14   admits occurred by the time the Lease was terminated. Nor has Landlord proffered

15   any competent evidence regarding the condition of the roof through that time so that

16   the jury may determine when, if at all, the Tenant engaged in affirmative conduct or

17   omissions that accelerated the reasonable wear and tear of the roof. Rather,

18   Landlord's experts base the expert report, in part, on unauthenticated satellite

19   images from Google Earth and Eagleview, in violation of Ninth Circuit decisional

20   law. *See, e.g.*, *U.S. v. Paciano Lizarrago-Tirado*, D.C. No. 13-10530 (9th Cir. June

21   18, 2015) (satellite Google Earth images containing GPS coordinates and other

22   identifying information must be authenticated and, to the extent the "tack" marker is

23   manually placed, it constitutes impermissible hearsay) *(*citing Fed. R. Evid. 801(a)).

24       Further still, Landlord admits that between the expiration of the Lease and the

25   time it secured a new tenant for the property in late December 2020 (which tenant

26   does not yet occupy the property), Landlord did absolutely nothing to the roof to

27   repair or maintain it. The evidence will show that after the expiration of the term of

28   the Lease, Landlord told Michelle Semegen, an employee of Landlord's then

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

property management company, CBRE, to put tarps on the roof, but Ms. Semegen never did and Landlord never followed up. [4] Landlord admits that its designee witness, Angela DeBellis, has never been to the property. Landlord admits it did not have a roofer examine the condition of the roof at the time of the turnover of the property in December 2019. Landlord admits that the first time its expert witness went to the property was on June 30, 2021, over eighteen (18) months after the turnover of the property, and that the expert witness, who is not a roofer or an appraiser, only made a visual inspection of the roof. Landlord also admits that following the turnover of the property Landlord marketed the property for sale or lease "as is," that it obtained a new tenant in late December 2020, and that the new tenant is responsible for the costs and expenses in replacing both the RTUs and the roof.

Landlord's admissions underscore Landlord's inability to introduce to the jury the evidence of the measure of damages, diminution in value, required under Kentucky law.

## III.   THE COURT SHOULD EXCLUDE UNRELIABLE EVIDENCE THAT IS NOT PROBATIVE OF THE PROPER MEASURE OF DAMAGES UNDER KENTUCKY LAW

### A.   Plaintiff Will Be Unable To Demonstrate Damages At Trial, As It Has No Evidence Of The Proper Measure Of Damages Under Kentucky Law

Plaintiff seeks replacement value as the measure of its alleged damages for both the RTUs and the roof. (Pl.'s Memo., pp, 3, 7). As discussed throughout, these

---

[4] To prevail on a claim for a breach of contract under Kentucky law, the plaintiff must establish the following elements by clear and convincing evidence: (1) the existence of a contract; (2) a breach of that contract; and (3) damages flowing from that breach. *See Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. App. 2007). A plaintiff cannot recover for damages which it "might have prevented by the use of reasonable efforts, expense, and diligence." *U.S. Bond & Mortg. Corp. v. Berry*, 61 S.W.2d 293, 298 (Ky. 1933). Accordingly, as a result of Landlord's admissions, it will not be able to prevail on its claim for breach of the Lease regarding the condition of the roof, or damages flowing from such breach.

are not the proper measure of damages under Kentucky law. Plaintiff attempts to avoid the obvious and necessarily devastating consequences of its failure to have any proof of the proper measure of damages under Kentucky law by arguing that "because Kentucky law requires some amount of damages before holding a contract has been breached," Defendants' position that Plaintiff cannot prove any damages at trial is an attempt to "retread the Court's order" that found breach of the Lease regarding the RTUs. (Pl's Memo, p. 7, citing *Sudamax Industria e Comercio*, 516 F. Supp. 2d 841, 845 (W.D. Ky. 2007)). Plaintiff misreads the holding in the *Sudamax* case, the Court's Order, its burden of proof, and Defendants' position. Further, and ignored by Plaintiff in its arguments, there was no determination concerning Plaintiff's breach of contract claim as it relates to the roof of the property and Plaintiff is required to prove at trial both a breach and resulting damages. As discussed below, it can do neither.

In *Sudamax*, in determining whether to grant a motion to dismiss on a breach of contract claim, the court stated: "To recover in any action based on breach of contract under Kentucky law, the party seeking to recover must 'show the existence and the breach of a contractually imposed duty'…The *elements* of a breach of contract are: (1) the existence of a valid contract; (2) breach of the contract; and (3) damages or loss to plaintiff." *Sudamax*, 516 F. Supp. 2d at 845 (internal citations omitted) (emphasis added). The *Sudamax* court held that plaintiffs "failed to set forth sufficient evidence to establish the existence of a valid contract between" plaintiffs and defendants, warranting dismissal of the claim. *Id.* Here, in the Order granting Plaintiff's motion for partial summary judgment regarding the vandalism to the RTUs, the Court found only that there was a breach of a "contractually imposed duty" concerning the RTUs. The Court expressly did not find any damages - that is up to the trier of fact and it is Plaintiff's burden to produce evidence from which the jury can properly assess damages. To the contrary, the Court stated: "The Court finds that summary judgment is appropriate on the **narrow issue of liability**

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  (**though not on the issue of amount**) regarding the breach of contract as it relates to

2  the maintenance of the [RTUs at the]Preston Highway Property." (Dkt, No. 76, at p.

3  10) (emphasis added).

4      Accordingly, neither the *Sudamax* case nor the Court's Order allows Plaintiff

5  to circumvent its obligation to offer reliable, relevant evidence at trial of its damages

6  under Kentucky law before it can recover any damages, or before the issue of

7  damages may be presented to the jury. At trial, Plaintiff has the burden of proof and

8  must establish both that the Lease was breached with respect to the roof, and must

9  offer evidence, in conformance with Kentucky law, of its damages with respect to

10  the RTUs and the roof. *See Wells v. Stagg*, 2016 WL 4410712, at *4 (Ky. App.

11  March 16, 2016) (the party seeking contract damages carries the burden to introduce

12  sufficient proof to allow the fact finder to calculate damages without engaging in

13  speculation). Plaintiff has no evidence to offer at trial of the proper measure of

14  damages under Kentucky law.

15      1.    **Plaintiff has no evidence of the proper measure of damages**

16  **regarding the RTUs and all evidence of "replacement" value should be**

17  **excluded.**

18      Plaintiff has no ability to proffer evidence of the proper measure of damages

19  under Kentucky law concerning the RTUs. Plaintiff's evidence is limited to the

20  replacement value of the RTUs, which is not the proper measure of damages in

21  Kentucky. Under Kentucky law, "the proper measure of damages for injury to

22  personal property is the difference in the fair market value of the property before

23  and after the accident." *McCarty v. Hall*, 697 S.W.2d 955, 956 (Ky. App. 1985); *see*

24  *also Worldwide Equipment Enterprises, Inc. v. Broan-Nuton LLC*, 191 F.Supp.3d

25  684, 691 (E.D. Ky. 2016) ("When personal property has been destroyed…the

26  measure of damages 'is the reasonable market value at the time and place of the

27  injury of the property so destroyed.'") (applying Kentucky law) (quoting S. *Ry. In*

28  *Ky. V. Ky. Grocery Co.*, 178 S.W. 1162, 1163 (1915)); *see also R&B Aircraft, Inc. v.*

*ABG Ambulance Services*, 949 F.3d 397 (6th Cir. 1991) (affirming entry of a directed verdict on issue of damages for failure to proffer evidence of fair market value at the time of the injury to the property). Thus, based on Kentucky decisional law Landlord must proffer evidence probative of the fair market value of the RTUs at the time of the breach - <u>not</u> when they were purchased. *See R & B Aircraft, Inc.*, 949 F.3d at *5.

Despite Plaintiff's burden, Plaintiff has no evidence of the fair market value of the RTUs immediately prior to the vandalism to present to the jury. As discussed above, Plaintiff does not know the age of the RTUs when they were vandalized and it did nothing to assess the value of the RTUs immediately before they were vandalized (or at any time). Plaintiff's damages expert, if permitted to testify, will testify that the RTUs had exceeded their reasonable useful life at the time of the vandalism, indicating that they had no value. The sole evidence Plaintiff will attempt to offer at trial, through its damages experts, is the replacement value of the RTUs. Since this is not the proper measure of damages, it must be excluded. Such evidence is not probative of the proper measure of damages and it will only mislead or confuse the jury.

The Court may exclude evidence that is not probative of the proper measure of damages in a case, but rather bears on an improper measure of damages. *See, e.g., Technology Licensing Corp. v. Gennum Corp*., 2004 WL 1274397, at *1 (N.D. Cal. Mar. 26, 2004) (evidence excluded where damages expert used improper measure of damages in expert opinion). Even evidence that otherwise would be probative of an issue in litigation may be excluded where its probative value is substantially outweighed by a danger that it will mislead or confuse the jury. *Garcia v. Praxair, Inc.*, 2021 WL 38183, at *17 (E.D. Cal. Jan. 5, 2021) (motion in limine granted where evidence of workers' compensation for the purpose of refuting damages would mislead or confuse the jury) (citing Fed. R. Evid. 403)). Thus, this Court may—and should—exclude all evidence bearing on the "replacement" value of the

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

RTUs, as it improperly measures the RTUs as of the date they were purchased. Failing to proffer evidence of the fair market value of the RTUs at the time of the breach risks misleading, confusing, and prejudicing the jury by steering them into measuring damages improperly.

2.   **Plaintiff has no evidence to introduce bearing on the proper measure of damages to the roof, and the Court should exclude evidence of replacement value of the roof.**

With respect to the roof, even if Plaintiff could show that the condition of the roof at the time of the turnover of the property was not the result of normal wear and tear, which it cannot because, among other reasons, Landlord admitted the roof had exceeded its useful life. Plaintiff has no evidence of the proper measure of damages to present to the jury. Under Kentucky law, the proper measure of damages for damage to real property is its diminution in value, *i.e.*, the difference between the market value of the property at the time just prior to it being damaged and the value of the property immediately thereafter. *See Am. Towers LLC v. BPI, Inc*., 130 F.Supp.3d 1024, 1035 (E.D. Ky 2015). Where a party seeks damages concerning injury to property, it must introduce evidence of the value of the property, as property valuations and assessments are not the province of a fact finder. *See Eubank v. Wheat, Baker & Co*., 1867 WL 6937, at *1 (Ky. App. April 24, 1867).

Here, the evidentiary record is devoid of evidence probative of the diminution in value of the property as the result of the condition of the roof. Plaintiff, which has the burden of production, will not and cannot present any evidence of the fair market value of the property at <u>any</u> time - including the difference in fair market value of the property with the roof in the condition it was in prior to the 2017 vandalism of the RTUs and the fair market value of the property with the roof in the condition it was in at the end of the term of the Lease - and therefore will not be able to carry its burden of proof concerning its damages.

Plaintiff admits it bought an old building in 2014 without inspecting it or

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

knowing the age or condition of the roof (or the age of the RTUs) on the property. Plaintiff has no witnesses who were at the property during the term of the Lease who can testify about the condition of the roof. Assuming Plaintiff could identify the deferred maintenance to the roof and what maintenance Tenant should have done to extend the useful life of the roof – which it cannot as it admits it did not know the condition of the building until August 2017 at the earliest when it did its first inspection of the property and has no evidence of what, if any, maintenance could have extended the useful life of the roof in 2017 or at any point thereafter. Plaintiff at best could argue that the useful life of the roof may have been extended for 3 months or 6 months, but it has no evidence of that and would be asking the jury to engage in pure speculation to award damages based on its arguments that are unsupported by any evidence. Evidence of damages that is uncertain and/or requires guesswork or speculation is not allowed. *See Ford Contracting, Inc. v. Kentucky Transp. Cabinet*, 429 S.W.3d 397, 407 (Ky. App. 2014) (contract damages must always be proven with reasonable certainty); *Wells v. Stagg*, 2016 WL 4410712, at *4 (Ky. App. March 16, 2016) (The party seeking contract damages carries the burden to introduce sufficient proof to allow the fact finder to calculate damages without engaging in speculation); *Spencer v. Woods*, 282 S.W.2d 851, 852 (Ky. 1955) ("[U]ncertain, contingent and speculative damages," are not recoverable).

Plaintiff has no evidence of the diminution in value of the property with a roof having the useful life of "x" years vs. a roof with a useful life of "y" years. That would require an appraisal. Plaintiff did not obtain an appraisal. Plaintiff did not obtain any expert opinion concerning the diminution in value of the property, if any, due to the condition of the roof in December 2019.

Plaintiff either intentionally or mistakenly misses the point concerning its alleged damages regarding the roof. Plaintiff admits the roof had exceeded its useful at the end of the term of the Lease and needed to be replaced. Though this admission is not fatal in itself, Plaintiff has no evidence to show when the roof needed to be

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

replaced, nor any evidence as to <u>why</u> it needed to be replaced, *i.e.*, whether it was due to deferred maintenance or normal wear and tear. Thus, even if Plaintiff could establish that Tenant deferred maintenance on the roof (which it cannot), and that the useful life left on the roof should have been an additional 3 months or 6 months, Plaintiff cannot point to any competent evidence from which a jury could reasonably assess what damages, if any, were caused by any such deferred maintenance. It is diminution in value, the difference in market value of the property in December 2019 with a roof with no deferred maintenance and the value of the property in December 2019 with a roof with deferred maintenance. Plaintiff has no such evidence.

As with the damages it seeks for the RTUs, the only evidence that Plaintiff will attempt to introduce at trial, through its damages experts, is evidence of the replacement value of the roof. As discussed throughout, however, that is not the proper measure of damages in Kentucky. Plaintiff's replacement value evidence is neither probative of the proper measure of damages, but rather bears on an improper measure of damages, and as such, it must be excluded. *See, e.g., Technology Licensing Corp.,* 2004 WL 1274397, at *1. Such evidence will only mislead or confuse the jury, which is another reason to exclude it. *See, e.g., Garcia,* 2021 WL 38183, at *17.

**B.     Additional Evidentiary Issues Concerning Plaintiff's Proposed Exhibits**

In addition to excluding the testimony of Plaintiffs' damages experts because they have no evidence probative of the proper measure of damages under Kentucky law, Plaintiff has marked exhibits for trial that have no foundation, contain hearsay, and hearsay within hearsay, are unreliable, irrelevant, and lack authenticity. Defendants' objections, and the bases for the objections, are summarized below.

1.     **Evidence of insurance should be excluded.**

Plaintiff is attempting to interject the issue of insurance into the case, namely,

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

that Tenant had insurance and made a claim with its insurer concerning the vandalism to the RTUs as a way of prejudicing the jury as to Tenant. *See* Plaintiff's proposed exhibits 20, 32, 100, 101, 102, 103, 104, 105, 108, 109, 449 and 450 in the Joint Exhibit List, each of which reference Tenant's insurance, insurance claim and/or the amount Tenant received from its insurer. (Dkt. No. 94). Defendants have objected to each exhibit on the bases of foundation, relevance, hearsay, and prejudice. (*Id.*). In general, "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." FRE 411. Plaintiff argues that evidence of the insurance, specifically in the Sworn Statement in Partial Proof of Loss (Ex. 20) is indicative of the actual cash value ("ACV") of the RTUs. This is incorrect because the purported "ACV" information in the Sworn Statement in Partial Proof of Loss ("Statement of Loss") is unreliable, inadmissible hearsay. The best evidence of the insurance contract is the insurance contract itself and Plaintiff does not have the insurance contract. *See* FRE 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."). Plaintiff admits it does not have any knowledge of the terms of the insurance contract. Without the insurance contract or knowledge of the terms of the insurance contract, the information in the Statement of Loss is irrelevant and unreliable. The Statement of Loss has information supplied by McLarens, Tenant's insurance adjuster, and contains a "Recommended ACV Payment" and an amount for "depreciation," but there is no way of knowing what these amounts are based on or what method was used in determining depreciation and ACV because that is based on the insurance contract and there is no evidence of the terms of the insurance contract. That makes the Statement of Loss wholly unreliable and without any probative value because the underlying evidence needed to support the depreciation and ACV is not part of the record.

Notably, Plaintiff's damages expert, Amanda Moore-Roberson, testified that

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1    "depreciation is the loss of a material object's value over time due to operation and
2    wear and tear", that there is a difference between depreciation and proof of loss for
3    an insurance claim, and that she could not express any opinion on depreciation of
4    the RTUs or whether Tenant could recover depreciation "because I have not
5    reviewed the insurance policies related to the vandalism claim." [N.T. 124: 13-
6    125:7; 126:6-9].

7         Further, the ACV calculation (and the method of arriving at the depreciation
8    amount) in the Statement of Loss was performed by some unknown third party who
9    will not be a witness at trial. As such it is inadmissible hearsay. Hearsay testimony
10   is defined as "a statement, other than one made by the declarant while testifying at
11   the trial or hearing, offered in evidence to prove the truth of the matter asserted."
12   Fed.R.Evid. 801(c). "[A]n extra-judicial statement is hearsay and inadmissible
13   "when the immediate inference the proponent wants to draw is the truth of assertion
14   on the statement's face...." *Mahone v. Leham,* 347 F.3d 1170, 1173 (9th Cir. 2003)
15   (internal citations omitted). "Further, even if [the evidence is] not offered to prove
16   the truth of the matter asserted, it [is] nonetheless hearsay [if] the inference the
17   plaintiff [seeks] to draw, depend[s] on the truth of [the third party's]
18   statement...." *Id.* (internal quotation marks and citations omitted).

19        Here, Plaintiff is seeking to offer the Proof of Loss for the truth of the matter
20   asserted – the actual cash value of the RTUs at the time of the vandalism and this
21   hearsay evidence must be excluded. FRE 801(c). In addition, Plaintiff seeks to
22   introduce the hearsay evidence to infer what the actual cash value of the RTUs was
23   at the time of the vandalism, based upon the unknown out-of-court third party's
24   statement and this evidence is inadmissible hearsay evidence and Plaintiff must be
25   prohibited from introducing it at trial.

26        The only thing the Statement of Loss is good for is determining the loss
27   insurable under an unstated, unidentified standard set forth in an insurance policy
28   that will not be introduced at trial. There is no evidence, reliable or otherwise, that

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  the insurance policy or those unidentified individuals who performed the

2  calculations knew Kentucky law or followed it. Further, even if the ACV or the fact

3  of Tenant's insurance had any probative value, which it does not, its probative value

4  is substantially outweighed by its prejudicial effect on the jury. See FRE 403 ("The

5  court may exclude relevant evidence if its probative value is substantially

6  outweighed by a danger of one or more of the following: unfair prejudice, confusing

7  the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

8  cumulative evidence."). Information concerning Tenant's insurance has no

9  relevance to the only issue for the jury's determination regarding the RTUs – what

10 damages, if any, has Plaintiff proved. Plaintiff has no evidence of the proper

11 measure of damages for the RTUs under Kentucky law and it cannot circumvent

12 that by offering unreliable hearsay evidence. Evidence concerning Tenant's

13 insurance has zero probative value in this case and Plaintiff's Exhibits 20, 32, 100,

14 101, 102, 103, 104, 105, 108, 109, 449 and 450 must be excluded.

15     In addition to the hearsay objections discussed above, the October 17, 2017

16 proposal from DEEM attached to Plaintiff's Exhibit 104 and separately offered as

17 Plaintiff's Exhibit 109, lacks foundation, is unreliable and irrelevant. Plaintiff will

18 not offer any witness from DEEM to authenticate the document, will not produce

19 any evidence of how the proposal was created or what information was used in

20 creating it, and the information concerning replacement costs of the RTUs is

21 completely irrelevant. As discussed above, replacement cost is not the proper

22 measure of damages under Kentucky law.

23          2.     **The preferred photograph exhibits must be excluded.**

24     Plaintiff has several categories of photographs that it wants to offer into

25 evidence. None of them have the proper foundation, indicia of reliability or

26 relevance, and all should be excluded.

27     The first category of photographs are those attached to reports dated August

28 25, 2017 and May 19, 2019 prepared by Partner Engineering and Science, Inc.,

marked as Exhibits 47 and 84. (Defendants' further objections to the reports are discussed below). The photographs are undated. The identity of the photographer is unknown. Plaintiff cannot lay any foundation for the photographs because it will not produce any witness from Partner Engineering and Science, Inc. Plaintiff has no witness who can testify about the photographs. Plaintiff has no evidence to establish the reliability or accuracy of any of the photographs. Further, even if Plaintiff could lay a foundation for the photographs, which it cannot, the photographs in Exhibit 47 are irrelevant to the issues in this case. Photographs of the exterior and interior of a building have nothing to do with the condition, at the time of the turnover of the property in December 2019, of the roof of this property. The two photographs in Exhibit 47 and the two photographs in Exhibit 84 that purport to be depictions of damaged RTUs also are irrelevant. There is no dispute in this case that the RTUs on the roof of this property were vandalized and damaged. The sole issue for trial regarding the RTUs is the amount of damages, if any, Plaintiff is entitled to recover for the damage to the RTUs caused by the vandalism. As discussed above, Plaintiff has no such evidence. The photographs in Exhibits 47 and 84 have no probative value.

The second category of documents are Google Earth photos, marked as Exhibits 154-160 and Exhibit 179. As discussed above, Plaintiff cannot authenticate these images because Plaintiff has no evidence to establish their reliability and accuracy. *See U.S. v. Lizarraga-Tirado*, 789 F.3d 1107, 1110 (9th Cir. 2015) (when faced with an objection based on reliability, "the proponent of Google–Earth–generated evidence would have to establish Google Earth's reliability and accuracy. That burden could be met, for example, with testimony from a Google Earth programmer or a witness who frequently works with and relies on the program. See Charles Alan Wright & Victor James Gold, Federal Practice & Procedure § 7114 (2000). It could also be met through judicial notice of the program's reliability, as the Advisory Committee Notes specifically contemplate. *See id.*; Fed.R.Evid. 901

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

n.9. b.")). Here, Plaintiff will not introduce evidence from a Google Earth programmer. However, the Court need not take determine whether to take judicial notice of the Google Earth documents because they are irrelevant and have no probative value concerning the issues for trial. Aerial images from 2001, 2004, 2006, 2010, 2013, 2016, and 2018 have no relevance or probative value concerning the condition of the roof of the property at the time of the turnover of the property in December 2019. (*See* Exhibits 154-160, 179). Tenant was not even a tenant at the property until 2012. Further, the aerial photographs were annotated by Plaintiff's experts, which is hearsay and adds to their unreliability. (*See* Exhibits 114, 156, 158, 159, 179). Of interest, Plaintiff's damages expert testified that the 2004 aerial photograph that Plaintiff wants to introduce (Exhibit 155) is "quite blurry" and that "it's hard to tell from an aerial image" (Exhibit 179) what the condition of the roof was in March 2021. [N.T. 97:6-19; 122:4-22]

The third category of photographs are those taken on June 30, 2021. (*See* Exhibits 113, 115-153, 162, 165-174). These photographs were not taken by any testifying expert and therefore lack foundation and reliability as no witness will authenticate them. There is no foundation to establish that any of the photographs accurately depicts the condition of the property in December 2019 at the end of the term of the Lease. The photographs have absolutely no relevance or probative value. Landlord admits that it has done no repairs or maintenance to the property since Tenant turned it over to Landlord on December 20, 2019. Landlord admits that the property has not been occupied by another tenant since the end of the term of the Lease.

The condition of the property as of June 30, 2021 has no relevance to the issues for trial – the condition of the roof in December 2019 at the end of the term of the Lease and Plaintiff's proof of damages, if any, regarding the condition of the roof at the time of the turnover of the property and Plaintiff's proof of damages, if any, regarding the RTUs. Photographs concerning the condition of the property on

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

June 30, 2021, more than 18 months after Tenant turned it over, will only serve to mislead and confuse the jury and must be excluded. Further, the Matterport Scans and substantially all of the photographs taken on June 30, 2021 are of the exterior and interior of the property, but not of the roof, another reason for excluding them. Similarly, the Floor Plans of the interior of the property (Exhibit 180) lack foundation and reliability and have no relevance to the issues in the case, requiring their exclusion.

   3. **The replacement value estimates in Plaintiff's expert report offered as exhibits by Plaintiff are inadmissible hearsay, unreliable, irrelevant and have no probative value, but only will mislead and confuse the jury and must be excluded.**

  Plaintiff's Exhibits 161, 164, and 175-178 contain "cost estimates" prepared using the Xactimate XI – Version 1.2 estimating program and based on the "inspection, photographs, and scope of repairs provided by Mrs. Amanda Moore-Roberson." For the reasons discussed above, none of the photographs are reliable or relevant, and therefore they cannot provide a foundation for the "cost estimates" prepared using the software program.

  More important, each of the "cost estimates" is an estimate for replacement value. As discussed above, replacement value of the RTUs or the roof of the property has no relevance or probative value but rather bears on an improper measure of damages. Replacement value is not the proper measure of damages under Kentucky law for the RTUs or the roof. Introduction of these exhibits (and any demonstrative exhibits that contain replacement value information) will only mislead and confuse the jury. These exhibits must be excluded. *See, e.g., Technology Licensing Corp.,* 2004 WL 1274397, at *1; *Garcia,* 2021 WL 38183, at *17.

   4. **The third party reports lack foundation, constitute inadmissible hearsay, are unreliable, irrelevant and have no probative value,**

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

**all of which requires exclusion.**

Plaintiff's Exhibits 45, 47, 52, 84, and 112 lack foundation, contain inadmissible hearsay, have no indicia of reliability or relevance and have no probative value. Exhibit 45 lacks foundation, is irrelevant, is classic hearsay and is completely unreliable. Exhibit 45, "Clune Construction Company Roofing Estimates dated April 19, 2021," is a <u>summary</u> of undated estimates – "Roofing Replacement-Budget Pricing" - from what appears to be three separate roofing companies compiled by Clune Construction Company for "InnovAge Louisville." This is hearsay within hearsay within hearsay within hearsay and therefore inadmissible. The Exhibit on its face has no indicia of relevance. During the parties' meet and confer, Plaintiff's counsel asserted that he does not know who or what InnovAge Louisville is. There is no address identified on the document. This alone warrants exclusion of Exhibit 45 on the basis of relevance. There is no foundation for the exhibit. No one from Clune Construction, InnovAge Louisville, or any of the other entities on the compilation, "Highland Roofing," "Thoroughbread" or "American Roofing" is on the witness list. The compilation has lump sum "Base Budget" amounts ranging from $425,000 to $775,000 without any breakdown. No one knows what property the compilation relates to, how the lump sum numbers were reached, what information was used, who prepared them, or what the knowledge or expertise of the preparer is. There is no way for the Court to vet the information in the compilation to determine its reliability. Putting irrelevant and unreliable dollar amounts in front of the jury has no probative value and will only mislead, confuse and prejudice the jury, thus warranting exclusion. Further, no expert can rely on the hearsay compilation in reaching an opinion because of the inherent untrustworthiness of the document and because its prejudicial effect substantially outweighs its (non-existent) probative value. *See* Fed. R. Evid. 702 and 703.

Exhibit 47, a Partner Engineering and Science, Inc. Property Condition Report dated August 15, 2017, and Exhibit 84, a Partner Engineering and Science,

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

Inc. Property Condition Report dated May 23, 2019, lack foundation, are relevant, unreliable, and contain inadmissible hearsay. Defendants separately discussed the photographs in the reports above because Plaintiff stated at the meet and confer that Plaintiff only intended to introduce the photographs in the reports. Plaintiff subsequently marked the entire reports as exhibits. The reports must be excluded in their entirety. Plaintiff has no witness who can authenticate the reports; no individual who authored or received the reports will testify at trial. The reports are not reliable as there is no way to know what information was used, who prepared what section of the reports, what information was used and for what purpose. There is no way for the Court to evaluate the information in the reports to determine their reliability. Further, the reports are not relevant to the issues for trial – the condition of the property at the time it was turned over in December 2019 and Plaintiff's damages, if any. The reports have no probative value but will only mislead, confuse and prejudice the jury.

Similarly, Exhibit 52, an unsigned letter from National Roofing Partners dated October 18, 2019 with an unaccepted "roofing proposal," must be excluded. It contains inadmissible hearsay, lacks foundation, and is neither relevant nor reliable. The author of the letter, Kim Baxter, is not on the witness list nor is any other individual at National Roofing Partners identified as a witness. The roofing proposal itself is inadmissible hearsay and does not fall into any exception to the hearsay rule. Without a witness to testify concerning how the roofing proposal was created, who created it, the scope of their knowledge and experience, what information was used, what information was rejected, and/or how the lump sum "Base Bid" was determined, there is no way for the Court to evaluate the letter to determine its reliability. Further, the roofing proposal dated October 18, 2019 is irrelevant to the issues before the jury – the condition of the roof of the property at the end of the Lease and Plaintiff's measure of damages, diminution in value, under Kentucky law. Defendants do not claim that Plaintiff had any pre-December 2019 obligation to fix

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

the roof. The letter has no probative value concerning either liability or damages under Kentucky law and will substantially prejudice the jury – misleading and confusing it if it is introduced into evidence.

Exhibit 112, the CBRE Abbreviated Inspection Checklist Building Checklist, must be excluded in its entirety, including because it lacks foundation and constitutes inadmissible hearsay. Michelle Semegen will not be present at trial and Plaintiff has stated its intent to read portions of her deposition testimony into the record. During her deposition, Ms. Semegen testified that she inspected the property on December 20, 2019 but did not take her own notes during the inspection, did not take any photographs, and did not create the report until February 2020, using notes prepared by another and photographs taken by someone else. [N.T. 31:11-32:11; 38:10-39:11; 51:4-53:7]. No one else from CBRE will be a witness. Further, substantially all of the checklist, including the attached photographs, are irrelevant because they relate to other parts of the property and not the RTUs or the roof, and the prejudice resulting from its admission substantially outweighs any probative value. The aerial photographs and the annotations to the photographs are inadmissible for the reasons discussed above.

Further, none of the information in Exhibits 47, 84, 52 or 112 is the type that can be reasonably relied upon by an expert.

Federal Rules of Evidence 702 and 703 provide, respectively:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)   the testimony is based on sufficient facts or data;

(c)   the testimony is the product of reliable principles and methods; and

(d)   the expert has reliably applied the principles and methods to the facts of the case

***

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would **reasonably rely on those kinds of facts or data** in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. **But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect**.

Fed. R. Evid. 702, 703 (emphasis added).

Under controlling Ninth Circuit law, Fed. R. Evid. 702 and 703 requires a two-step analysis as follows:

1.     It must first be determined whether the facts proposed to be used by an expert are "reasonably relied upon by experts in the particular field in forming opinions or inferences…" *U.S. v. W.R. Grace*, 504 F.3d 745, 759 (9th Cir. 2007). If the subject facts are reasonably relied upon, then "the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted." *Id.*

2.     Even if the facts are reliable and therefore otherwise inadmissible evidence may be relied upon, however, "then those facts 'shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.'" *Id.* (quoting Fed. R. Evid. 703). If the facts are not reliable or trustworthy then the expert may not rely on them to form his or her opinion. *Id.*

Thus, under the second step in the two-part analysis, expert opinions may rely on facts which otherwise would be inadmissible as hearsay only if they are reliable—and even if they are—the underlying facts only may be disclosed to the jury if their probative value **substantially outweighs** their prejudicial effect. *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261-62 (9th Cir. 1984) (also noting that the hearsay evidence may only be used to explain the basis for the expert opinion, and it is not substantive evidence itself). The guiding principal under a Rule

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

703 analysis—that is, whether an expert may rely on facts which otherwise would be inadmissible—is **trustworthiness**. *Id.* Rule 703 is itself akin to a hearsay exception, in that "an opinion may be based on any type of evidence commonly used by experts in the field." *Rogers v. Raymark Industries, Inc*., 922 F.2d 1426, 1429-30 (9th Cir. 1991) (emphasis added); *see also Ambrosini v. Labamaque*, 966 F.2d 1464 (D.C. Cir. 1992) ("Rule 703 broadens the acceptable bases for expert testimony by allowing an expert to base an opinion on hearsay and other evidence not admissible in court…"); *United States v. Unrub*, 855 F.2d 1363, 1376 (9th Cir. 1987).

Where the basis for an expert's opinion is unreliable hearsay, the courts will reject it. *See* 1 Witkin, Cal. Evid. 5th Opinion Evid § 37 (2021). Conversely, an expert may rely on hearsay testimony if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." *Facebook, Inc. v. Power Ventures, Inc*., 252 F.Supp.3d 765, 780 (N.D. Cal. 2017), *aff'd*, 749 F.App'x 557 (9th Cir. 2019); *United States v. Cazares*, 788 F.3d 956, 977 (9th Cir. 2015) ("Expert witnesses may rely on inadmissible hearsay in forming their opinions, so long as it is of the type reasonably relied upon by experts in their field."); *Odyssey Wireless, Inc. v. Apple Inc*., 2016 WL 7644790, at *8 (S.D. Cal. Sept. 14, 2016); *Gray v. United States*, 2007 WL 4644736, at *7 (S.D. Cal. Mar. 12, 2007) (expert opinions based on generally inadmissible data, such as hearsay, are to be admitted only if the data are of a type reasonably relied upon by experts in the field in forming opinions). The Court should reject any expert opinion based on the unreliable hearsay in these Exhibits.

Further, there is no exception to the hearsay rule that would allow such opinion testimony. Exhibits 45, 47, 52, 84 and 112 are not "business records" of Plaintiff. Considering the foregoing two-part test, the business records exception to the hearsay rule allows the admission of systematically entered business records without the necessity of locating and calling as a witness the individual who kept

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

them. Fed. R. Evid. 803(6); *see, e.g., City of Phoenix v. Com/Systems, Inc.*, 706 F.2d 1033, 1037–38 (9th Cir.1983). *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1353 (9th Cir. 1987), opinion modified on reh'g, 866 F.2d 318 (9th Cir. 1989).

Fed. R. Evid. 803(6) provides that evidence that otherwise would be hearsay is admissible if it is a record of a "regularly conducted business activity," namely:

A record of an act, event, condition, opinion, or diagnosis if:

(A)   The record was made at or near the time by – or from information transmitted by – someone with knowledge;

(B)   The record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C)   Making the record was a regular practice of that activity;

(D)   All the conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11)…and

(E)   The opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). The final element of the business records exception, which requires that all evidence that otherwise would fall under the exception be trustworthy. *See, e.g., Cyclone USA, Inc. v. LL&C Dealer Services, LLC*, 2007 WL 662337, at *43 (expert testimony regarding damages inadmissible because it relied on financial inputs, *i.e.*, the cost of invoices, provided by employees of the Defendants—and therefore was unreliable). Thus, the unreliability and untrustworthiness of the exhibits precludes them from being introduced through any witness or relied upon by any expert.

Defendants anticipate other evidentiary issues will arise during trial.

## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants submit that Plaintiff will be unable to carry its burden of proving liability concerning the condition of the roof at the time of the surrender of the Premises. Because Plaintiff is using the wrong

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1   measure of damages under Kentucky law, it will be unable to carry its burden of

2   proving its damages. Defendants' objections to Plaintiff's exhibits should be

3   sustained.

5   DATED: November 23, 2021          FREEMAN, FREEMAN & SMILEY, LLP

8                                     By:      /s/ Dawn B. Eyerly
                                      _____
9                                          DAWN B. EYERLY
                                           Attorneys for Defendant FITNESS
10                                         INTERNATIONAL, LLC and Defendant
                                           and Counter-Claimant FITNESS &
11                                         SPORTS CLUBS, LLC

12  DATED: November 23, 2021          KLEHR HARRISON HARVEY
                                      BRANZBURG LLP *(Admitted Pro Hac Vice)*
13

15                                    By:      /s/ A. Grant Phelan
                                      _____
16                                         A. GRANT PHELAN
                                           MARY ELLEN O'LAUGHLIN
17                                         Attorneys for Plaintiff FITNESS
                                           INTERNATIONAL, LLC
18

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100